T. MATTHEW PHILLIPS, ESQ.
Calif. State Bar No. 165833
United States Bar No. 317048
(*Not Licensed in Nevada*)
4894 W. Lone Mtn. Rd., No. 132
Las Vegas, Nevada 89130
Telephone: (323) 314-6996
TMatthewPhilllips@aol.com
*Self-Represented*

2:25-cv-01464-GMN-NJK

# UNITED STATES DISTRICT COURT

## LAS VEGAS, NEVADA

|  |  |
|---|---|
| **T. MATTHEW PHILLIPS** <br><br> *Plaintiff* <br><br> *vs.* <br><br> **HON. MARI PARLADE** <br><br> *Defendant* | ) **Case No:** <br> ) <br> ) <br> ) COMPLAINT *for* <br> ) DAMAGES *and* INJUNCTION, <br> ) *Deprivations of Federally Protected* <br> ) *Civil Rights*, [42 U.S.C. § 1983]. <br> ) <br> ) (1)  Right to a Fair Tribunal <br> ) (2)  Right to Procedural Due Process <br> ) (3)  Abuse of Process <br> ) (4)  Fraud-Upon-the-Court <br> ) (5)  Fraud / Misrepresentation <br> ) <br> ) ***Plaintiff Demands Trial by Jury.*** <br> ) |

### - ISSUE *of* FIRST IMPRESSION -

<u>Material Facts</u>:  Plaintiff-dad alleges that Defendant-judge used *artificial intelligence*, ("A.I."), to decide five motions in his family court case.

<u>Issue of First Impression</u>:  May judges delegate their decision-making duties to *artificial intelligences*?—meaning A.I. technologies?  (No, of course, not.)  Judges may not delegate decision-making duties to A.I. adjudicative processes.  It goes without saying; Nevada law requires contested matters shall be adjudicated by humans, *not* machines, [*see* NCJD, Rule, 2.7].

<u>Governing Law</u>:  When it comes to deciding contested matters, Nevada law is clear and unequivocal—an assigned judge shall decide matters before the bench.  "*A judge shall hear and decide matters assigned to the judge*," [NCJD, Rule  2.7].

<u>Legal Analysis</u>:  A judge is the only one who may decide contested matters.  Judges may not delegate decision-making duties—to machines or other humans; (<u>note</u>: a judge might, in theory, be able to delegate such duties—but only where the parties so stipulate, pursuant to the parties' informed consent).

<u>No Judicial Immunity</u>:  Yes, judges are immune from liability—but only for "judicial acts," [*Stump v. Sparkman*, 435 U.S. 349 (1978)].  Here, the act in question—delegating decision-making duties to A.I. adjudicative processes—*does not* constitute a "judicial act" within the meaning of *Stump vs. Sparkman*, [*id*.]; as a result, judicial immunity *does not* here attach.

<u>Subject-Matter Jurisdiction</u>:  Nevada judges necessarily lack subject-matter jurisdiction, ("legal authority"), to delegate their decision-making duties to A.I. adjudicative processes.  Once again, "[*a*] *judge shall hear and decide* matters assigned to the judge*," [NCJD, Rule  2.7; (bold italics added)].

*    *    *

### I.    Jurisdiction, Venue & Parties.

(1)    <u>Jurisdiction</u>:  U.S.D.C. has federal question jurisdiction, 28 U.S.C. § 1331, to hear the instant controversy, which "arises under" the Fourteenth Amendment, including the rights to procedural due process and a fair tribunal.

(2)    <u>Venue</u>:  Venue is properly laid in Clark County, Nevada.  All relevant events took place in Clark County, Nevada.

(3)    <u>Plaintiff</u>:  Phillips is a California attorney, (Cal-Bar No. 165833), in good standing for 33 consecutive years.  Phillips is *not* licensed in Nevada; *however*, he is licensed in U.S.D.C. *Central District of Calif.*, (Los Angeles), and U.S.D.C. *Northern District of Calif.*, (San Francisco), the *Ninth Circuit Court of Appeals*, and the *United States Supreme Court*, (U.S. Bar No. 317048).

(4)    <u>Defendant-Judge</u>:  Defendant, Hon. Mari Parlade, is a Clark County family-court judge.  Plaintiff sues Defendant-judge in the judge's individual capacity—*not* as an agent of the State.  Eleventh Amendment immunity does not apply.

(5)    <u>Doe Defendants</u>:  Does, 1 and 2, are identified as Clark County courtroom marshals; when their true names are known, Plaintiff will seek leave to amend.

(6)    <u>Jury Trial Demand</u>:  Plaintiff demands trial by jury, [Seventh Amendment].

### II.    Nature of the Case.

(7)    <u>Judge Uses A.I. to Decide Motions</u>:  Is it legal for judges to use A.I.?  Well, it's not *illegal*; but judges are duty-bound to decide matters on their own.  By using A.I. to decide Phillips' motions, the judge violated his 14th Amendment right to (i) a fair tribunal, and (ii) procedural due process.  The judge committed (iii) abuse of process, (iv) fraud upon the court, and (v) fraud / misrepresentation.  Finally, to add insult, the A.I.-generated ruling (in its ineffable wisdom) concluded that Phillips' motions were "frivolous."  When all's said, the judge committed the cardinal sin that novice A.I. users so typically commit—*i.e.*, the judge never bothered to verify the A.I. work-product.

### III.   The Judge Does Not Deny the A.I. Allegations.

(8)   <u>Failure to Deny A.I. Allegations.</u>:  Once it donned on Phillips that the judge had used A.I. to decide his five motions, he moved to disqualify.  In response, the judge filed a declaration; *however*, and remarkably, the judge *did not* deny the pointed A.I. allegations.  Phillips argues that the judge's failure-to-deny is highly probative.  It amounts to a tacit admission.

(9)   <u>Relief Sought</u>:  By using A.I. to decide five family-court motions, the judge ventured beyond the "jurisdiction pale"—where the protective immunity shield does not extend.  Judicial immunity does not here apply.  Phillips thus seeks compensatory damages for Defendant-judge having used an A.I. program to decide five family-court motions—then compounding the transgression by failing to verify the A.I. work-product.  As injunctive relief, Phillips seeks a court order voiding and expunging the *Minute Order*, (Aug. 15, 2023), [Exhibit No. "1"].

### IV.   When Judges Resort to A.I. in the Decision-Making Process,
### Judicial Immunity Does Not Attach to the A.I. 'Rulings.'

(10)   <u>No Judicial Act</u>:  Judges are immune from liability—for "judicial acts," [*Stump v. Sparkman*, 435 U.S. 349 (1978)].  But where, *as here*, judges delegate decision-making duties to A.I. technologies—it's *not* a "judicial act."  And thus, judicial immunity *does not* attach.

(11)   <u>Clear Absence of All Jurisdiction</u>:  When judges decide motions via A.I. programs, they act in the "clear absence of all jurisdiction," [*Stump v. Sparkman*, U.S. 349 (1978)].  A judge's volitional use of A.I., to decide contested matters, comes in the "clear absence of all jurisdiction," [*id*.].  By resorting to A.I., the judge did more than merely exceed the scope of legal authority; *rather*, the judge never had legal authority to use A.I. in the first place.  As a matter of law, judges may not delegate their judicial decision-making duties, [*see* NCJD, Rule  2.7— "[*a*] *judge shall hear and decide matters assigned to the judge*"].

(12)    'Normal Judicial Function': To invoke judicial immunity, the conduct at-issue must be a "normal judicial function"; *however*, where judges turn to A.I. technologies to decide contested matters, it's *not* a "normal judicial function," [*see Meeks v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999)].

(13 )   Constitutional Oath: The judge defaulted on the sacred *Oath* to uphold the Constitution, and this, Phillips argues, militates against judicial immunity. Phillips, *respectfully*, urges a bright-line rule that precludes judges from claiming immunity to the *Supreme Law of the Land* or their own *Constitutional Oath*.

(14)    The Voters Spoke: On Nov. 8, 2024, Clark County voters spoke and they cast their ballots for Mari Parlade—*not* ChatGPT; (ChatGPT wasn't on the ballot). But the point is, the voters elected Mari Parlade to resolve child custody disputes—*not* a machine. When Defendant-judge, on Aug. 15, 2023, denied Phillips' five motions, then signed the A.I.-generated ruling, the judge perpetrated fraud upon the court, as well as Clark County voters.

## V.    Clark County Family Court – Dept. 'A' – Aug. 15, 2023.

(15)    On Aug. 15, 2023, Phillips appeared in Dept. "A," for oral arguments on five pending motions. Defendant-judge was the sitting judge. The ex-wife and her lawyer appeared on video. It was a total disaster. The judge violated Phillips' federally protected civil rights. (The ex-wife's rights were violated too; *however*, the ex-wife gets a free, state-sponsored lawyer for life, which effectively disables her ability to petition the court to redress civil rights grievances…)

(16)    Objectively speaking, any third party, on Aug. 15, 2023, having witnessed the drama unfold in Phillips' family court case, would've seen a judge—painfully biased against Phillips. In open court, Aug. 15, 2023, the judge showed favoritism to the ex-wife and her lawyer—mainly because the ex-wife is represented by lawyers from the *Legal Aid Center of Southern Nevada*, ("LACSN"), towards which Clark County judges pays overt deference.

(17)   In Phillips' family case, the ex-wife finagled a ***free attorney***, for life, paid-for, in part, by Nevada taxpayers, Clark County taxpayers, and family court judges, such as Judge Bill Henderson, who states he is, "not aware of any District Judge that does not support the Legal Aid Center," [*Order*, 01/23/2024].

(18)   LACSN is a quasi-charity and quasi-law firm.  LACSN has provided ***free legal services*** to Phillips' ***ex-wife***, for ***eight years!***  The State and County *comp* Plaintiff's ex-wife with free attorneys in, (i) family court, (ii) Court of Appeals, (iii) Nevada Supreme Court, (iv) U.S. District Court, (v) U.S. Ninth Circuit, and (vi) the U.S. Supreme Court.

(19)   In 2023, the State of Nevada and Clark County gave $5.8 million to LACSN; in 2024, the State of Nevada and Clark County gave $10.6 million to LACSN. These contributions allow LACSN to provide, to the ex-wife, free lawyers for life. From Phillips' P.O.V., it would appear the State and County placed their wagers on the ex-wife; (Phillips, an experienced litigator—licensed to practice in the U.S. Supreme Court—never won a family-court motion in 8 years.).

## VI.    The 'Memoranda-of-Points-and-Authorities' Fiasco.

(20)   On Aug. 15, 2023, Defendant-judge denied five of Phillips' motions— concluding they were "frivolous."  But how did these motions fail so miserably? Remarkably, the judge denied Phillips' motions—for failure to include memoranda of points & authorities!  But this decision has no basis in reality.  Truth is, Phillips' motions do indeed contain memoranda of points and authorities.

(21)   Defendant-judge, on Aug. 15, 2023, ruled that Phillips' motions lack points and authorities; the judge then reasoned that, with no points and authorities, the court may rightly presume Phillips' motions are "frivolous."  But, in fact, Phillips' motions do contain statutory and case-law citations, (aka, points and authorities). So, what could the judge have meant?—when declaring Phillips' motions lack memoranda of points and authorities?

(22)   On Aug. 15, 2023, Phillips stood there, in open court, totally befuddled. Again, all five of his motions had statutory and case-law citations, (*i.e.*, points and authorities).  So, what was going-on?  It was puzzling.  It was bewildering.

(23)   Phillips believed the judge was making outlandish claims, to provoke a confrontation, from which the judge would derive pretense to effectuate arrest. Phillips believed this because, during the hearing, which lasted over an hour, two very unfriendly deputy marshals stood adjacent to Phillips at counsel table— one in front of Phillips, the other behind Phillips.  These two marshals were *flexing*—with specific intent to intimidate Phillips.

(24)   On Aug. 15, 2023, the marshals stood poised to arrest Phillips the moment the judge commanded.  But, why the show of force?—for a 62-year-old lawyer?— with no history of fisticuffs at counsel table?  The reader will note, Phillips was the *only* civilian in the courtroom.  The ex-wife and her lawyer appeared on Zoom, and the marshals had chased-out all the court-watchers and locked the doors. So, why the ominous security presence?  (Who was being protected from whom?)

(25)   On Aug. 15, 2023, Defendant-judge sought to *criminalize* Phillips—by pretending he poses an imminent danger to public safety.  To further this pretense, the judge called-up an additional deputy marshal.  These two deputy marshals, (Does No. 1 and No. 2), treated Phillips as though he were a violent criminal. (Note: courthouse marshals take orders from, and answer directly to, their assigned judges, *not* the Clark County Sheriff.)

(26)   Cursory inspection of Phillips' motions reveals statutory citations and case-law citations, *i.e.*, "points and authorities."  Indeed, points and authorities plainly appear in Phillips' motions.  And, in response to Phillips' motions, the ex-wife filed staunch oppositions; but curiously, the ex-wife *did not* oppose for failure to include memoranda of points and authorities!  Rather, that argument came from the judge, who ruled for the ex-wife—*based on a legal argument the ex-wife's attorney never made!*  This tends to suggest judicial bias.

### VII.   The Law Respects Form Less Than Substance.

(27)   So, how did Defendant-judge reach this inexplicable conclusion?—that Phillips' motions contain no points and authorities?  Remarkably, the judge found that Phillips' motions lack points and authorities—and are therefore "frivolous"—based on the fact that Phillips' motions contain **no conspicuous headings** that feature the exact verbiage, "MEMORANDUM OF POINTS & AUTHORITIES."

(28)   Local rules require a memorandum of points and authorities; but, does this mean the parties' briefs must include a conspicuous **heading?**—in all caps—titled "MEMORANDUM OF POINTS & AUTHORITIES?"  No!  The ancient legal maxim, "substance-over-form," here applies.  **The law respects form less than substance.** What's important is whether a brief has legal citations—*not* whether it has a conspicuous **heading**, in all caps—titled "MEMORANDUM OF POINTS & AUTHORITIES." However, on Aug. 15, 2023, the judge wrongfully elevated form over substance—as a basis to deny Phillips' motions, for want of conspicuous **headings**, in all caps, titled "MEMORANDUM OF POINTS & AUTHORITIES."

(29)   The judge's finding, *i.e.*, that Phillips' motions failed to include memoranda of points and authorities, is a telltale sign of A.I. use.  Notably, Phillips' motions *do not* contain conspicuous **headings**, in all caps, with the exact verbiage, "MEMORANDUM OF POINTS & AUTHORITIES."  And so, when the judge uploaded the parties' motions to an A.I. program, which integrates the local rules, which require a "MEMORANDUM OF POINTS & AUTHORITIES"—the A.I. bots would've been searching-for—*but unable to find in Phillips' motions*—the exact verbiage, "MEMORANDUM OF POINTS & AUTHORITIES."  This explains the "finding" that Phillips' motions lack memoranda of points and authorities, which ultimately led to the unsavory conclusion that his motions were "frivolous."

(30)   One of Phillips' motions sought to eject non-parties from the e-service list. Notably, the judge [at 10:26 a.m.], "**denied**" this motion—due to a fatal absence of "points and authorities."  Moments later, [at 10:28 a.m.], the judge "**granted**"

the motion!   The court ordered non-parties ejected from the e-service list, (just as Phillips requested).   Remarkably, the judge simultaneously **denied** and **granted** the same motion!   Defendant-judge, in million years, could never rationally explain or otherwise reconcile such contradictory rulings; (and, as the reader may guess, the contradiction is a flashing, A.I. signpost).

(31)   Notably, on Aug. 15, 2023, the judge read aloud from a prepared script— which tends to suggest A.I. use.   More notable still, while reading aloud, the judge stumbled over the words—which suggests the judge is *not* the author of the prose read aloud in court that day, which again, tends to suggest A.I. use.

### VIII.   Impropriety *vs*. Impartiality.

(32)   On Aug. 15, 2023, reading from a prepared script, Defendant-judge made diclsosures to the parties re Facebook.   The judge indicated these disclosures were made to avoid the "appearance of any **impartiality**"; but wait—why would a judge wish to avoid the "appearance of **impartiality?**"   For goodness' sake, judges are supposed to be impartial**.**   Obviously, the correct terminology is, "appearance of "**impropriety**"—*not* "appearance of "**impartiality**."   Here, we see a classic, *Freudian* slip-of-the-tongue, A.I. style.   This conspicuous word transposition, "**impartiality**" *vs*. "**impropriety**," tends to suggest A.I. use.

(33)   As further proof that Defendant-judge used A.I, to decide Phillips' motions, Phillips presents a telling statement, in which the judge declares—

> "In response to [the ex-wife's] limited opposition … Mr. Phillips, also filed a motion to strike the immaterial and scandalous material from [the ex-wife's] opposition, pursuant to NRCP 12(f); therefore, **the court consolidates those as one document**."
>
> [*Defendant-Judge*, Aug. 15, 2023); (bold italics added)].
>
> (But what does it mean?—to consolidate **two briefs** as "**one document?**")

/ / / /

### IX.   To 'Consolidate' Briefs Suggests A.I. Use.

(34)   What does it mean?—when a judge "consolidates," as one document, a motion with its opposition?  Here, the judge "consolidated" the parties' briefs—***Phillips' motion*** plus the ***ex-wife's opposition***—which can only mean that the judge simultaneously ran both briefs through the same A.I. program.

(35)   After the judge had consolidated the parties' briefs into "one document," the A.I. bots began the search for scandalous allegations—searching ***Phillips' motion*** and the ***ex-wife's opposition***.  The A.I. bots did locate scandalous allegations—in Phillips' motion!—(which one would expect because, naturally, his motion to strike describes the allegations to be stricken).  The A.I. bots then ruled to strike the allegations—***from Phillips' motion to strike!***

(36)   Again, after the judge "consolidated" the briefs, (motion + opposition), the A.I. bots searched both briefs, (motion + opposition), for scandalous material, and *voilà*, they found it—***in Plaintiff's motion to strike.***  The fact that the court struck language from Phillips' motion to strike suggests A.I. use.

(37)   What did Phillips seek to strike?  He sought to strike scandalous allegations that he threatened to shoot-up his son's elementary school.  For some time, Phillips had sought to strike these insane and cartoonish allegations.  Then, one day, the court finally did strike them—but from the wrong brief!  (The irony is palpable.)  Ultimately, the *Minute Order*, (Aug. 15, 2023), strikes from the record all references to the supposed school-shooting event, [*see* Exhibit No. "1"].

(38)   All too often, in family court, opportunistic ex-wives, and their unscrupulous lawyers, tell tall tales.  Back in 2018, an unknown person began to circulate scurrilous rumors that Phillips threatened to shoot-up his son's elementary school.  The ex-wife's attorney urged the court to believe Phillips threatened the school, but it was all a hoax.  Motivated by actual malice, the ex-wife's lawyer, one, Shannon Wilson, had sunk to deplorable depths.  But, again, it was all a hoax.  Phillips dubbed it the "***Shannon Wilson hoax.***"

**X.    Shannon Wilson Hoax?—or Shannon 'R.' Wilson Hoax?**

(39)    On Aug. 15, 2023, in Phillips' family court case, the judge declares—

> "*The court hereby strikes* the remainder of *[Phillips'] motion concerning the quote-unquote, 'Shannon R. Wilson hoax,'* and any reference to [Phillips'] *alleged threats to shoot-up*, quote-unquote, '*to shoot up his son's school*,' unquote, pursuant to NRCP 12(f)."
>
> [*Defendant-Judge*, Aug. 15, 2023; (bold italics added)].

Notably, the judge purportedly quotes from Phillips's motion, "concerning the quote-unquote, *Shannon R. Wilson hoax*."  But this "quote" never appears in Phillips' motion.

(40)    Again, in reference to the supposed school-shooting, Phillips dubbed it the "*Shannon Wilson hoax*"—and yet the judge struck, from Phillips' motion to strike, language that doesn't exist therein, *i.e.*, "*concerning the quote-unquote, 'Shannon R. Wilson hoax.*"  This tends to suggest A.I. use.

(41)    Phillips dubbed it the "*Shannon Wilson hoax*"—with no middle initial "*R*," while the judge purports to quote from Phillips' brief, referring to the hoax as, "*the quote-unquote, Shannon R. Wilson hoax*," (but again, use of the middle initial, "*R*," never appears in Phillips' brief).

(42)    On Aug. 15, 2023, the judge indicates the court may strike from the record, the allegations that Phillips threatened to shoot-up his son's school—

> "[T]he language, in page 4 of [Phillips'] motion, regarding *what [Phillips] dubs* the *Shannon R. Wilson hoax,* and any reference to any alleged threats to, quote-unquote, "*shoot up his son's school*," as well as any language *in pages, 6 through 11 of [Phillips'] … motion*."
>
> [*Defendant-Judge*, Aug. 15, 2023; (bold italics added].

(43)    Notably, the judge claims Phillips called it the "*Shannon R. Wilson hoax*." But again, this is inaccurate—Phillips called it the "*Shannon Wilson hoax*."

Here, the false attribution, concerning a "false quote," bears distinctive earmarks of A.I. use. Glaring misquotes plainly indicate A.I. use.

(44)   Apparently, the A.I. bots must've noticed counsel's name as it appears on the caption page, "***Shannon R. Wilson***." This may explain why the A.I. bots dubbed it the "***Shannon R. Wilson hoax.*** In contrast, Phillips' motion to strike dubbed it the "***Shannon Wilson hoax***," (without the "***R***").

(45)   As further proof of A.I. use, Defendant-judge, on Aug. 15, 2023, twice made a peculiar statement. In referring to *Nevada Supreme Court* in Carson City, the judge awkwardly calls it, "the highest ***state*** of this ***court***"—apparently meaning to have said, "the highest ***court*** of this ***state***." Reminiscent of dyslexia, this mischievous word transposition tends to suggest A.I. use.

(46)   On Aug. 15, 2023, an A.I.-generated ruling denied Phillips' five motions. The judge had wrongfully delegated decision-making duties—to a machine; *however*, as above explained, judges may not delegate decision-making duties, [NCJC, Rule 2.7; ("*A judge shall hear and decide matters.*")].

(47)   On Aug. 29, 2023, Phillips moved to disqualify. On Sept. 6, 2023, the judge finally relented and stepped-down from Phillips' family court case.

## XI.    No Oral Arguments—Questions Only.

(48)   At the hearing, Aug. 15, 2023, the judge refused to allow oral arguments. The judge "closed [Her Honor's] mind to the presentation of all the evidence," [*Cameron v. State*, 114 Nev. 1281, 1283 (1998)]. Right from the start, the judge was prepared to rule on Plaintiff's pending motions; *however*, the judge would *not* entertain oral arguments; *instead*, the judge allowed questions only. But this encumbers Phillips' right to procedural due process and a fair tribunal.

(49)   The judge, in open court, asks the parties, "Do you have any questions?— ***I'm not entertaining arguments, just questions***." But Phillips had timely requested oral argument; *therefore*, he's entitled to argue on his "day in court."

(50)   In open court, Defendant-judge reiterates, "***I'm not entertaining arguments, but if you have any questions*** …"  The judge's mind was already made-up—*regardless* of what the parties might argue.  This refusal to allow oral argument soundly defeats confidence in the judiciary, [*see* NCJC, Rule 1.2].

(51)   In civil court, judges may decide motions without oral argument, [EDCR, Rule, 2.23]; *however*, EDCR, Rule 2.23, is "inapplicable" in family court, which requires oral argument, [EDCR, Rule 5.101].  Local rules require oral argument in family court because, of course, fundamental rights are at-stake.


## XII.   The Deputy Marshal—a Judge's Private 'Pit Bull.'

(52)   On Aug. 15, 2023, Defendant-judge arranged for two deputy marshals to intimidate Phillips.  During the hearing, the two marshals stationed themselves in Phillips' immediate presence, one in front of him, the other behind him.  The two marshals ***stood the duration of the hearing*** (over an hour).  Based on their adversarial postures, Phillips believed they sought to ***effectuate his arrest***.

(53)   Reasonable persons—witnessing the coercive and intimidating presence of the marshals—would conclude that their boss, (the judge), is *not* impartial towards Phillips, but rather, decidedly partisan.

(54)   On Aug. 15, 2023, the judge threatened Phillips with a contempt citation for "name-calling."  While addressing the bench, Phillips politely shared his opinion that the court was being too "***persnickety***."  But the court took offense at what it saw as "name-calling."  However, name-calling involves names, which are "nouns," (*e.g.*, "jerk," "dummy," "loser," *etc.*); and, "***persnickety***" is *not* a "noun." Therefore, the word "***persnickety***" is *not* fairly characterized as "name-calling." Dictionaries define "***persnickety***" as paying too much attention to minor details. The word does not connote insult; nor was it intended as such.  Here, we see a judge concocting pretext—in an attempt to effectuate arrest—in retaliation against Phillips for his ardent resistance to family-court oppression.

(55)  In open court, Aug. 15, 2023, Phillips was uncomfortable.  He protested the ominous presence of the two marshals.  Phillips explained to the judge that the heavy security presence made him feel as though it were a *criminal* proceeding. But the partisan judge blithely ignored Phillips' concerns.

(56)  It is constitutionally intolerable for judges to subject parents to a hostile work environment in the courtroom—trying to make parents believe their arrest is imminent.  Defendant's coercion and intimidation deprived Phillips of federally protected civil rights, including the right to a "fair tribunal," [14th Amendment]. ////

## CAUSE *of* ACTION No. 1 — RIGHT *to a* FAIR TRIBUNAL

(57)  <u>Right to a Fair Tribunal</u>:  Phillips brings Cause-of-Action No. 1, for violation of Plaintiff's ***right to a fair tribunal***, against Defendant-judge.

(58)  <u>Fourteenth Amendment</u>:  The Fourteenth Amendment guarantees the right to a ***fair tribunal***.  But here, by (i) using A.I. to decide Phillips' motions, (ii) denying the right to oral argument, and (iii) using the marshals to intimidate and coerce, Defendant violated Phillips' ***right to a fair tribunal***.

(59)  <u>42 U.S.C. § 1983</u>:  When judges wrongfully delegate decision-making duties, it violates the right to a fair tribunal, which gives rise to a civil rights claim under 42 U.S.C. § 1983, for which Plaintiff seeks compensatory damages.

(60)  <u>State Actor</u>:  Plaintiff sues Defendant in an individual capacity.  Defendant is a state actor, *i.e.*, a "person" subject to suit under Sec. 1983.

(61)  <u>Color of Law</u>:  Acting under *colorable authority*, Defendant, (i) used A.I. to decide Phillips' motions, (ii) denied the right to oral argument, and, (iii) used the marshals to intimidate and coerce, all of which violates Phillips' fundamental right to a fair tribunal.

(62)  <u>Compensatory Damages</u>:  Having endured violations of his right to a fair tribunal, Phillips sustains harm, for which he seeks compensatory damages.

(63)  <u>Punitive Damages</u>:  By resorting to A.I. use, Defendant-judge demonstrates a "reckless or callous indifference to the federally protected rights of others," [*see Smith v. Wade*, 461 U.S. 30, 56 (1983)].  Plaintiff is thus entitled to punitive damages—in a dollar amount sufficient to deter other family court judges.

/ / / /

## <u>CAUSE *of* ACTION No. 2 — PROCEDURAL DUE PROCESS</u>

(64)  <u>Procedural Due Process Violations</u>:  Phillips brings Cause-of-Action No. 2, for ***procedural due process violations***, against Defendant-judge.

(65)  <u>Fourteenth Amendment</u>:  The Fourteenth Amendment guarantees the right to ***procedural due process***, *i.e.*, true and correct courtroom procedure.  But here, by using A.I., the judge commits ***procedural due process*** violations.

(66)  <u>42 U.S.C. § 1983</u>:  When judges delegate decision-making duties, it violates the right to procedural due process, which gives rise to a civil rights claim under 42 U.S.C. § 1983, for which Plaintiff seeks compensatory damages.

(67)  <u>State Actor</u>:  Plaintiff sues Defendant in an individual capacity.  Defendant is a state actor, *i.e.*, a "person" subject to suit under Sec. 1983.

(68)  <u>Color of Law</u>:  Acting under *colorable authority*, Defendant, (i) used A.I. to decide Phillips' motions, (ii) denied the right to oral argument, and, (iii) used the marshals to intimidate and coerce, all of which violate Phillips' fundamental right to procedural due process, (*i.e.*, true and correct procedure).

(69)  <u>Compensatory Damages</u>:  Having endured violations of true and correct legal procedure, Phillips sustains harm, for which he seeks compensatory damages.

(70)  <u>Punitive Damages</u>:  By resorting to A.I. use, Defendant-judge demonstrates a "reckless or callous indifference to the federally protected rights of others," [*see Smith v. Wade*, 461 U.S. 30, 56 (1983)].  Plaintiff is thus entitled to punitive damages—in a dollar amount sufficient to deter other family court judges.

/ / / /

## CAUSE *of* ACTION No. 3 — ABUSE *of* PROCESS

(71)  Abuse of Process:  Phillips brings Cause-of-Action No. 3, for "abuse of process," as against Defendant-judge.

(72)  Requisite Elements:  "An abuse of process claim consists of two elements: (1) an ulterior purpose other than resolving a legal dispute, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding." [*Dutt v. Kemp*, 894 P.2d 354 (Nev. 1995), citing, *Kovacs v. Acosta*, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990).  An "ulterior purpose" includes any "improper motive" underlying the issuance of legal process, [*see Laxalt v. McClatchy*, 622 F. Supp. 737, 751 (D. Nev. 1985)].

(73)  Improper Motives:  By using A.I. to decide Phillips' motions, the judge had improper motives—(i) to make the judge's job easier, (ii) to avoid holding a hearing to hide the fact that the judge was unprepared, and (iii) to retaliate against Phillips.  These improper motives demonstrate abuse of process.

(74)  Improper Conduct:  Defendant-judge (i) used A.I. to decide Phillips' motions, (ii) denied the right to oral argument, and (iii) used the marshals to intimidate and coerce.  Defendant-judge engaged in conduct "not proper in the regular conduct of the proceeding," [*Dutt v. Kemp*, (*supra*)].  This improper conduct demonstrates abuse of process.

(75)  Compensatory Damages:  Having endured abuse of process in his family court case, Phillips sustains harm, for which he seeks compensatory damages.

(76)  Punitive Damages:  By resorting to A.I. use, Defendant-judge demonstrates a "reckless or callous indifference to the federally protected rights of others," [*see Smith v. Wade*, 461 U.S. 30, 56 (1983)].  Plaintiff is thus entitled to punitive damages—in a dollar amount sufficient to deter other family court judges.

/ / / /

## **CAUSE *of* ACTION No. 4 — FRAUD UPON *the* COURT**

(77)    Fraud Upon the Court:  Phillips brings Cause-of-Action No. 4, for ***fraud upon the court***, against Defendant-judge.

(78)    No 'Formal' Requirements:  When it comes to claims of fraud on the court, "[t]here are no formal requirements for asserting a claim of fraud on the court," [*U.S. v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002)].

(79)    Elements—Fraud On the Court:  The Third Circuit explains that fraud on the court requires: "(1) intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court," [*Herring v. U.S.*, 424 F.3d 384, 386 (3d Cir. 2005)].  Phillips can prove all four elements.

(80)    Intent to Defraud:  Prong No. 1, (*supra*), "requires a showing that one has acted with an intent to deceive or defraud the court," [*Robinson v. Audi*, 56 F.3d 1259, 1267 (10th Cir. 1995)].  When the judge denied Plaintiff's motions—then signed her name on the court order—it creates an impression that the judge "decided" the motions; but herein lay the fraud.  The judge was *not* the "decider."

(81)    Officer-of-the-Court:  As to Prong Nos. 2 and 3, Defendant-judge is an officer of the court, and the false attestation, *i.e*, that the judge "decided" Phillips' motions, was "directed at the court itself."

(82)    The Court Deceived:  By using A.I. to decide motions, the judge deceived the court.  And the deception continues still.  As proof, the family court, on Feb. 4, 2025, declared Phillips "vexatious."  In its vexatious order, (Feb. 4, 2025), the most recent family court judge refers to Phillips's arguments, from Aug. 15, 2023, as "frivolous, baseless, and wholly erroneous."  Here, we see the impact of Defendant's fraud upon a subsequent judge.

(83)    Relevant Inquiry:  Fraud on the court is "fraud which is directed to the ***judicial machinery*** itself," [*Bulloch v. U.S.*, 763 F.2d 1115, 1121, (1985); (bold italics added)].  The relevant inquiry is whether the fraudulent conduct "harmed the integrity of the judicial process," [*Estate of Stonehill*, 660 F.3d 415, 444, (9th

Cir. 2011)].  Here, the judge's fraudulent conduct most certainly "harm[s] the integrity of the judicial process," [*id.*].

(84)    <u>Judicial Machinery</u>:  Fraud upon the court is fraud that actually affects the *machineries* of justice.  Distinguishable from garden-variety fraud, Phillips' claim for fraud upon the court refers to—

> "that species of fraud which does or attempts to defile the court itself
> … so that the ***judicial machinery*** can not perform in the usual manner
> its impartial task of adjudging cases," [*see* <u>Martina Theatre Corp. v.</u>
> <u>Schine Chain Theatres</u>, 278 F.2d 798, 801 (2d Cir. 1960); and,
> <u>Bulloch v. U.S.</u>, 763 F.2d 1115, 1121, (1985)] (bold italics added)].

(85)    <u>Injunctive Relief</u>:  Where there is fraud on the court, orders may be overturned as void, [*see, e.g.,* <u>In re Tri-Cran, Inc.</u>, 98 B.R. 609, 616 (Bankr. D. Mass. 1989); *see also*, [<u>H.K. Porter Co. v. Goodyear Tire & Rubber</u>, 536 F.2d 1115, 1119 (6th Cir. 1976)].  Phillips seeks an order voiding and expunging the judge's fraudulent *Minute Order*, dated Aug. 15, 2023, [*see* Ex. No. "1"].

(86)    <u>Compensatory Damages</u>:  Having endured fraud in his family court case, Phillips sustains harm, for which he seeks compensatory damages.

(87)    <u>Punitive Damages</u>:  By resorting to A.I. use, Defendant-judge demonstrates a "reckless or callous indifference to the federally protected rights of others," [*see Smith v. Wade*, 461 U.S. 30, 56 (1983)].  Plaintiff is thus entitled to punitive damages—in a dollar amount sufficient to deter other family court judges.

/ / / /

### CAUSE *of* ACTION No. 5 — FRAUD / MISREPRESENTATION

(88)   Fraud / Misrepresentation:  Phillips brings Cause-of-Action No. 5, for ***fraud / misrepresentation***, against Defendant-judge.

(89)   False Representation:  Defendant-judge falsely represented a material fact, *i.e.*, that the ruling in Phillips' family law case, Aug. 15, 2023, was made by a human judge.  Defendant made this false representation with actual knowledge of its falsehood.

(90)   Intent to Induce Reliance:  Defendant intended that Plaintiff should act in reliance on the false representation, *i.e.*, that the ruling in Phillips' family law case, Aug. 15, 2023, was made by a human judge.

(91)   Justifiable Reliance:  Plaintiff (and others) justifiably relied upon Defendant's false representation, *i.e.*, that the ruling in Phillips' family law case, Aug. 15, 2023,   was made by a human judge.

(92)   Damages:  As a direct and proximate result of Plaintiff's justifiable reliance upon Defendant's false representation, Plaintiff sustains harm, for which he seeks general and special damages.  Defendant's false representation was a substantial factor in causing Plaintiff's harm.

(93)   Punitive Damages:  Plaintiff seeks punitive damages as per NRS 42.007. Defendant acted with intent to deceive, which demonstrates "fraud"; Defendant acted with intent to cause injury, which demonstrates "malice"; and, Defendant subjected Plaintiff to unjust hardship, which demonstrates "oppression."  Plaintiff is thus entitled to punitive damages—in a dollar amount sufficient to deter other family court judges.

/ / / /

## **PRAYER *for* RELIEF**

(94)    WHEREFORE, Plaintiff, T. Matthew Phillips, prays for judgment against Defendant, Hon. Mari Parlade, as follows:

        (a)    judgment for Plaintiff on all causes-of-action;

        (b)    compensatory damages in a dollar amount T.B.D. at trial;

        (c)    punitive damages in a dollar amount sufficient to deter other family court judges;

        (d)    an order voiding or expunging the *Minute Order*, dated, Aug. 15, 2023;

        (e)    an order awarding costs and expenses incurred.

Dated: **Aug. 8, 2025**        *Respectfully Submitted,*


*T. Matthew Phillips*
_____
T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
United States Bar No. 317048
(*Not Licensed in Nevada*)
Email: TMatthewPhillips@aol.com
Tel: (323) 314-6996


*          *          *

VERIFICATION *of* T. MATTHEW PHILLIPS, ESQ.

I am T. Matthew Phillips, the Plaintiff.  The within allegations are true and correct of my own personal knowledge.  If called upon to testify, I could and would give competent and truthful evidence.

1.     Attached as Exhibit No. "1" is a true and correct copy of the Dept. A *Minute Order*, dated Aug. 15, 2023, issued in my family court case.

2.     Attached as Exhibit No. "2" are true and correct copies of emails re spoliation, between me and the County, (Sept. 13, 2023 – Sept. 14, 2023).

3.     Almost two years have passed since the disaster in Dept. "A."  Since that time, A.I. technologies have progressed with lightspeed.  A.I. apps will soon be competent to adjudicate most controversies.  And, frankly, I would prefer A.I. judges to human judges, especially in family court.  Judicial bias is an inevitable frailty of human nature.  Judicial bias now plagues family courts nationwide. The only surefire way to eliminate judicial bias—is through the use of morally neutral and emotionally detached arbiters, *i.e.*, judicial robots.  What better way to dispense justice with dispassion?

***I declare under penalty of perjury under the laws of the State of Nevada the foregoing is both true and correct.***

Dated:  **Aug. 8, 2025**          *Respectfully Submitted,*

*T. Matthew Phillips*

T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
United States Bar No. 317048
(*Not Licensed in Nevada*)
Email: TMatthewPhillips@aol.com
Tel: (323) 314-6996

\*      \*      \*

*Complaint for Damages and Injunction,* p. 21 *of* 21

# Exhibit No. "1"

Minute Order, (Aug. 15, 2023)

D-18-578142-D

# DISTRICT COURT
# CLARK COUNTY, NEVADA

| | | |
|---|---|---|
| **Divorce - Complaint** | **COURT MINUTES** | August 15, 2023 |

D-18-578142-D      Amber Phillips, Plaintiff
                   vs.
                   Todd Phillips, Defendant.

**August 15, 2023      10:00 AM      All Pending Motions**

**HEARD BY:**   Parlade, Mari D                    **COURTROOM:**   Courtroom 02

**COURT CLERK:**   Sheila Bourne

**PARTIES:**
Amber Phillips, Plaintiff, Counter Defendant,          Shannon Wilson, Attorney, present
present
Donovan Phillips, Subject Minor, not present
Todd Phillips, Defendant, Counter Claimant,          Pro Se
present

| **JOURNAL ENTRIES** |
|---|

- MOTION: DEFENDANT'S MOTION TO CORRECT A CLERICAL MISTAKE...OPPOSITION: PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR DECLARATORY RELIEF, ETC...MOTION: RESPONDENT'S MOTION TO VACATE VOID CUSTODY ORDER (DECEMBER 19, 2020)...MOTION: RESPONDENTS MOTION TO STRIKE IMMATERIAL AND SCANDALOUS MATTER, [NRCP, RULE 12 (F)]...MOTION: RESPONDENT'S MOTION FOR DECLARATORY RELIEF, AND MODIFICATION OF CUSTODY AND CHILD SUPPORT...OPPOSITION: PLAINTIFF'S LIMITED OPPOSITION TO DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE TO EJECT THIRD-PARTY INTERLOPER FROM SERVICE LIST AND REQUEST FOR ATTORNEY'S AND COSTS...MOTION: DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE TO EJECT THIRD-PARTY INTERLOPER FROM SERVICE LIST

THIS MATTER came before the Honorable Mari D. Parlade' on August 15, 2023, at 10:00 a.m. for a Motion Hearing.

| PRINT DATE: | 09/11/2023 | Page 1 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice:  Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

Present at the hearing and appearing IN PERSON and/or via BLUEJEANS VIDEOCONFERENCE and JAVS recording were Plaintiff/Mom, Defendant/Dad, and Shannon Wilson, Nevada Bar Number 9933, PRO BONO, on behalf of Mom. The Court appeared IN PERSON.

Upon the matter being called and placed on the record, both Parties were administered the oath and sworn in. The Court NOTED this is a SEALED matter, Post-Divorce. The Court made its disclosure on the record that during her campaign, she had to BLOCK on social media a: T. Matthew Phillips and Matthew T. Phillips from her personal page and campaign page, and the Court inquired if the Parties and Counsel wanted to consider to waive disqualification or recuse the Court pursuant to RULE 2.11 (C). The Defendant/Dad represented he had no concerns and wanted the Court to Rule in his matter. Ms. Wilson represented to the Court that she and Plaintiff/Mom did not have any concerns. The Court NOTED it would proceed and that it had reviewed the papers and pleadings on file.

The Court inquired if this matter was resolved. Ms. Wilson represented there were no changes in the case status. Defendant/Dad represented he tried to send several proposals to Ms. Wilson, and she never responded. Dad accused the Court for being PERSNICKETY.

The COURT stated its FINDINGS and ORDERED the following:

COURT FINDS Plaintiff and Defendant share one (1) child, DONOVAN MATTHEW PHILLIP, date of birth, November 08, 2005.

COURT FINDS pursuant to EDCR 5.503, EDCR 5.509, and NRS 22.032, Defendant/Dad's Motion for an Order to Show Cause to Eject Third-Party Interloper from Service List shall be DENIED.

Opposition, the COURT FINDS Respondent's meritless, baseless Motion, is saved by the Petitioners Limited Opposition, filed on January 18, 2023, which did set forth the requisite points and authorities for this Court to grant relief, The Court GRANTS the relief requested in the Petitioners Limited Opposition wherein the Court FINDS, ORDERS, ADJUDGES and DECREES that this case is already SEALED, pursuant to NRS 125.080 and NRS 125.110, furthermore, pursuant to EDCR 5.212, subsection (a), this Court has the legal authority to make trials and hearings private, further upon demand by either Party, all persons with limited exceptions to those delineated in NRS 125.080 2 (a) through (f) shall be excluded from this courtroom unless the Court determines in the interest of justice that the best interest of the child so be served. Therefore, pursuant to NRS 125.080 and NRS 125.110, and EDCR 5.212, the Court hereby emphasizes and reaffirms that this case is SEALED and any and all third-parties, including Defendant/Dad or Nevada Judges, its affiliates, agents, any and all Third-Party Interlopers or third-parties not including the Parties herein and Counsel are hereby excluded from these proceedings, service list, and all aspects of this case. The Court FURTHER FINDS that in the event that any third-party names appear on the Eservice List, it is incumbent on the

| PRINT DATE: | 09/11/2023 | Page 2 of 12 | Minutes Date: | August 15, 2023 |

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

Parties herein to deselect the names of the third-parties from the Eservice List so as to ensure the documents that they are filing are only served upon the Parties and Litigants herein.

Plaintiff's Limited Opposition to Defendant's Motion for Order To Show Cause to Eject Third-Party Interloper from Service List, the COURT NOTES the Respondent/Dad herein also filed in Response to Petitioners Limited Opposition filed on January 18, 2023 Dad also filed a Motion to Strike Immaterial and Scandalous Matter, [NRCP, Rule 12 (f)] from Petitioners Limited Opposition, the Court is going to consolidate those to one document. The Court hereby STRIKES the remainder of Respondent/Dad's Motion concerning the "Shannon R. Wilson Hoax," and any reference to Respondent/Dad's alleged threats to "shoot up his son's school." Pursuant to [NRCP, Rule 12 (f)] as well as all pages six (6) through (11) of Respondent/Dad's February 06, 2023, Motion, to Strike Immaterial and Scandalous Matter, pursuant to [NRCP, Rule 12 (f)], the COURT FINDS the language in page four (4) of Respondent/Dad's Motion regarding what Respondent/Dad dubs the "Shannon R. Wilson Hoax," and any alleged threats to "shoot up his son's school," as well as any language from pages six (6) through eleven (11) of Respondent/Dad's February 06, 2023, Motion to Strike Immaterial and Scandalous Matter are Immaterial, Redundant and Scandalous Matter that do not have any value in this Court's Decision to enforce NRS 125.080 and pertinent statutes to ensure that this case is sealed. In its Decision and Order dated December 19, 2020, the Court rendered very specific Findings of Fact to support its Decision and Order GRANTING Mom SOLE LEGAL CUSTODY and PRIMARY PHYSICAL CUSTODY subject to a very specific REUNIFICATION PROCESS that Respondent/Dad must comply with, the Courts Findings of Fact to support its Decision and Order was AFFIRMED in its entirety by the Supreme Court, State of Nevada with the United States Supreme Court DENYING Respondent/Dad a Writ of Certiari, therefore, the COURT FINDS the December 19, 2020 ORDER will not be disturbed or reconsidered by this Court, therefore, Respondent/Dad's responses on page four (4) of his Motion shall be STRICKEN in its entirety, pursuant to [NRCP 12 (f)(1)] as Immaterial, impertinent, redundant and scandalous, and any and all reference to a "Shannon R. Wilson Hoax," or any and all reference to Respondent/Dad's alleged threats to "shoot up his son's school," or any repercussions thereof regarding any third-parties not involved in this action are HEREBY STRICKEN FROM THE RECORD.

Respondent/Dad's Motion for Declaratory Relief and Modification of Custody and Child Support and Plaintiff's Opposition to Defendant's Motion for Declaratory Relief, Etc., and for Attorney's Fees thereto, the COURT FINDS pursuant to EDCR 5.503(a) Every Motion, Opposition, Countermotion, and reply shall include points and authorities supporting each position asserted and an affidavit supporting all factual averments. Points and authorities lacking citation to relevant authority or consisting of bare citations to statutes, rules, or case authority do not comply with this Rule. The absence or deficiency of points and authorities may be construed as an admission that the filing is not meritorious or as cause for denial of all positions not supported. The COURT FINDS that the Respondent/Dad's Motion contains no points and authorities. Respondent/Dad has cited no legal authorities in support of his Motion. Respondent/Dad's failures does include points and authorities

| PRINT DATE: | 09/11/2023 | Page 3 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

in support of his request for relief may be construed as an admission that the filing is not meritorious or has caused for denial on all positions not supported. Respondent/Dad's Motion for Declaratory Relief is essentially a Motion for Reconsideration of matters that have already been adjudicated by the District Court, memorialized in the December 19, 2020, Decision and Order and AFFIRMED in its entirety by the Nevada Supreme Court, with the Writ of Certiari, DENIED by the United States Supreme Court. Respondent/Dad erroneously responded that the District Court terminated his Parental Rights which is frivolous, baseless, and wholly erroneous. Respondent/Dad's arguments are essentially the same arguments he has made in this case, and in his Appeal to the Nevada Supreme Court, as noted herein, the Nevada Supreme Court has already rejected Respondent/Dad's arguments, including his argument regarding alleged Termination of Parental Rights. The Supreme Court AFFIRMED the December 19, 2020, District Court Decision and Order in its entirety. The Supreme Court further DENIED Respondent/Dad's request for a rehearing, and the United States Supreme Court DENIED Respondent/Dad's Writ of Certiorari; therefore, the Decision and Order dated December 19, 2020, GRANTING Plaintiff/Mom SOLE LEGAL CUSTODY and PRIMARY PHYSICAL CUSTODY, STAND, subject to Respondent/Dad's REUNIFICATION PROCESS that he must comply with as well as limited visitations with the child pursuant to the Order that STANDS. The COURT FINDS Respondent/Dad's Parental Rights have not been terminated; therefore, Respondent/Dad's arguments concerning any Due Process or Termination of Parental Rights are baseless. The State absolutely has the right to make Custodial Orders in the best interest of the child pursuant to Rico v. Rodriguez 120 P. 3d 812, 121 Nev. 695 - Nev: Supreme Court, (2005), Respondent/Dad's custodial rights to his child are clearly delineated in this Decision and Order, it is up to Respondent/Dad to exercise his Parental Rights by following through on the Reunification Therapy Process clearly delineated in the Decision and Order which was found to be in the best interest of the child, for the protection of the child due the Court's finding of clear and convincing evidence of DOMESTIC VIOLENCE, that both child and Plaintiff/Mom were subjected to at the hands of Respondent/Dad, these Orders are in the best interest of the child, they are grounded in law, they have been AFFIRMED by the State, the highest State of our Court; therefore, there is no legal basis for this Court to Modify, Set Aside, or Declare the Decision and Order that has already been AFFIRMED by the highest State of this Court; therefore, the Court shall DENY Respondent/Dad's Motion for Declaratory Relief.

The Motion for Modification of Custody, the COURT FINDS pursuant to NRS 125C.0045 (1), this Court has jurisdiction to Modify Custody at any time during the pendency of an action at the final hearing or at any time thereafter during the minority of the child a Modification for a PRIMARY PHYSICAL ARRANGEMENT, which is what we have in this case, is appropriate when (1) there has been a substantial change in circumstances affecting the welfare of the child, (2) the modifications for the child's best interest pursuant to Ellis v. Carucci, 123 Nev. 145, 161 P.3d 239 (2007), the moving Party bears the burden of satisfying both prongs. The COURT FINDS the moving Party, in this case, has not satisfied either prong and has failed to show generally any substantial change in circumstances since the most recent Custodial Order or how the substantial change in circumstances

| PRINT DATE: | 09/11/2023 | Page 4 of 12 | Minutes Date: | August 15, 2023 |

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

has affected the welfare of the child or that modification would serve the best interest of the child. Respondent/Dad has failed to establish either of these prongs, therefore, Respondent/Dad's Motion to Modify Custody is hereby DENIED.

Modification of Child Support, EDCR 5.507 states that unless otherwise ordered by the Court or otherwise required by another rule or statute: (a) A General Financial Disclosure Form (GFDF), also known as an (FDF), must be filed in support of any motion or countermotion that includes a request to establish or modify child support. A GFDF must be filed in support of the document, and it must be filed within three (3) days of the filing of the Motion. The COURT FINDS that Respondent/Dad filed a Motion for Declaratory Relief and Modification of Custody and Child Support on January 31, 2023. Respondent/Dad failed to file a GFDF within three (3) days of filing his Motion to Modify Child Support, therefore, pursuant to EDCR 5.507, subsection (g) The Court may construe Respondent/Dad's Motion not supported by a timely complete accurate FDF as admitting the position as a basis for imposing sanctions. EDCR 5.507 subsection (g) reads in its entirety the Court may construe any motion, Opposition, or countermotion not supported by a timely, complete, and accurate financial disclosure as admitting that the positions asserted are not meritorious and cause for entry of orders adverse to those positions, and as a basis for imposing sanctions. The COURT FINDS Respondent/Dad's failure to file his FDF within three (3) days of the filing of his Motion, pursuant to the requirements set forth in EDCR 5.507 (a) (d) and (g) shall be construed by this Court as grounds that the Motion is not meritorious and as a basis for imposing sanctions.
The COURT FINDS and CONCLUDES that Respondent/Dad violated the EDCR 5.507 by failing to file a timely, accurate FDF with the Motion to Modify, the Court therefore DENIES Respondent/Dad's Motion to Modify Child Support is not meritorious. The COURT FURTHER FINDS that Case Number R-20-215472-R is the CHILD SUPPORT CASE, and is handling any changes in Child Support must be handled through that office.

Upon the Court's inquiry if Counsel or Dad had questions regarding its Ruling, Dad represented he wanted to state for the record a factual correction that there had never been harm committed against the minor child; the Petitioner made allegations that Dad beat her up for twenty years and that there was no harm against the minor child, no allegations of child abuse, no child neglect, no child endangerment, no child abandonment, no Child Protective Services (CPS) Reports/no substantiated CPS Reports, no documented history of any harm or allegations of harm to the minor child, and that it was just the verbal allegations from the Petitioner/Mom's mouth, standing alone. COURT NOTED it stands on its Decision and the factual findings set forth in the December 19, 2020, Decision.

Respondent's Motion to Vacate Void Custody Order December 19, 2020, COURT FURTHER FINDS that pursuant to EDCR 5.503, Motion, Opposition, countermotion, and reply content. (a) Every Motion, Opposition, countermotion, and reply shall include points and authorities supporting each position asserted and an affidavit supporting all factual averments. Points and authorities lacking citation to relevant authority or consisting of bare citations to statutes, rules, or case authority do not

| PRINT DATE: | 09/11/2023 | Page 5 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice:  Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

comply with this Rule. The absence or deficiency of points and authorities may be construed as an admission that the filing is not meritorious or as cause for denial of all positions not supported. The COURT FURTHER FINDS that in Respondent/Dad's Motion to Vacate Void Custody Order the Respondent/Dad failed to set forth legal basis to Set Aside Decision and Order dated, December 19, 2020, as set forth herein and incorporated herein this Court's FINDINGS and ORDERS, as to the prior Motions Respondent/Dad's arguments are basically the same arguments he has made in this case and in his Appeal to the Nevada Supreme Court as NOTED herein, the Nevada Supreme Court has already REJECTED Respondent/Dad's arguments, the Nevada Supreme Court AFFIRMED the December 19, 2020, District Court DECISION and ORDER in its entirety, having considered the procedural history in that case concerning the various judicial departments, the Supreme Court further DENIED Respondent/Dad's request for a rehearing, and the United States Supreme Court DENIED Respondent/Dad's Writ of Certiari, therefore, the DECISION and ORDER of the District Court, dated December 19, 2020, STANDS, and the Court, therefore, DENIES Respondent/Dad's Motion to Vacate Void Custody Order. The Court NOTED it did not see an Opposition to Respondent/Dad's Motion, and Ms. Wilson confirmed that no Opposition was filed and no request for Attorney's Fees was made. The COURT FURTHER ORDERED that there was no request for Attorney's Fees sought for this Motion, and NO ATTORNEY'S FEES SHALL BE GRANTED for this Motion.

Upon the Court's inquiry if Counsel or Dad had questions regarding its Ruling. Dad inquired if the Court was allowing arguments on the Motion. The Court NOTED it had already read everything and if there were any updates or resolutions because the Court was ready to rule on the moving papers without a hearing, but the Court wanted to be able to see the Parties today in the interest of full disclosure. COURT NOTED that if Dad has any additional arguments, as Dad had fully briefed the matter and provided the Court with a plethora of Motions to review, as well as the history of this case. Respondent/Dad represented to the Court that he had a new argument and stated, "with all due respect, Your Honor was being a little bit PERSNICKETY." Respondent/Dad represented nowhere in his documents did he state points and authorities, and he knows that a lot of Attorney's do that, as he has been practicing law for thirty-one (31) years; grounds for relief he thinks is substantially similar to point and authorities and Dad represented the Rules he cited and the leading cases explaining how a Void Order, and that the Court has subject matter jurisdiction, the authority to void out this case based on the citations Dad provided to this Court and that this was not just bare bone allegations; Dad represented clearly he and Ochoa were adversarial not just because Dad was suing him, but also because he had busted Ochoa out on campaign violations, he was fined by the Secretary of State and on the day that he took away his child Dad had just busted him out with the Secretary of State and Dad was adversarial in Court, and these would be grounds pointed out, and Dad stated there are points and authorities (See JAVS 10:46:42 A.M.) The Court inquired if Ms. Wilson would like to respond, and Ms. Wilson represented to the Court that she did not have any response. The Court, having reviewed the papers and pleadings herein and having reviewed the cases that were cited by Dad herein, the COURT STANDS BY ITS ORDER that this matter has been AFFIRMED by the

| PRINT DATE: | 09/11/2023 | Page 6 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

Nevada State Supreme Court Highest State, and all these matters were addressed before the Supreme Court, the Supreme Court has DENIED the Petition for Rehearing, the United States Supreme Court has DENIED the Writ of Certiorari, and therefore, the DECISION and ORDER rendered by this Court, by the Eighth Judicial District Court of Nevada on December 19, 2020, the DECISION STAND.

The Court NOTED it has one more Motion and that it would need some information from the Parties, that is, Defendant/Dad's Motion to Correct a Clerical Mistake. The Court NOTES it had reviewed the document and looks to the Parties because the Court was not the Judge in this matter. The Court does see a couple of readings of this, and the Court understands that Dad is requesting; the Court is specifically looking at the language in the Motion where it says, however, at the hearing for the Protective Order, Plaintiff learned that the Defendant made phone calls to the child's school and threatened...the Court is not trying to rehash testimony, and inquired if there is a Stipulation to this if Plaintiff and Defendant's name was, in fact, transposed the Court can go ahead and take this up to the Honorable Judge Ochoa but at this point, the Court is not going to reopen a case, rehear arguments, or rehear testimony; the Court's question is very limited, should it be changed to read, "however at the hearing for the Protective Order Defendant learned of Plaintiff's allegation that Defendant made phone calls to the child's school and threatened." The Court apologized if the Court was reading both out of context, and that it was taking it directly from Dad's Motion. The Court understands it first said, "however at the hearing for the Protective Order Plaintiff learned that the Defendant made phone calls to the child's school," the Court's reading of that aligns with the Court's reading of the testimony as well as the papers and pleadings that Plaintiff learned that Defendant allegedly made phone calls to the child's school. Upon the Court's inquiry to Plaintiff/Mom and Ms. Wilson, was it true that at the hearing for the Protective Order did Mom learn that the Dad made phone calls to the child's school? Ms. Wilson represented to the Court that is correct, the Plaintiff learned that information at the hearing on the Protective Order. COURT NOTED it is not going to change anything, it knows that Dad wanted to change a couple of items, but at this point, the source of knowledge stays with the Plaintiff. The Court inquired to Mom that "at the hearing for the Protective Order Plaintiff learned that Defendant made phone calls to the child's school and threatened..." Mom stated that is accurate. The Court is NOT INCLINED to change the ORDERS of the Court to add more language in it; the COURT FINDS that Mom's testimony is credible. The Court recognizes that Dad is asking for the Court to read into it and add more language. The Court allowed arguments by Dad. Dad represented to the Court that the Motion was Unopposed and noticed Your Honor was very PERSNICKETY with the Rules and almost unfair. The Court NOTED that Dad has called the Court PERSNICKETY not once but twice, and the Court takes issue with that; Dad calling the Court language could be construed as Contempt of Court if Dad is standing before this Court and calling the Court names, and the Court has been at all times utmost respectful to the Parties and will not tolerate any name calling in its courtroom. Dad represented to the Court that he understands and that his point is that he does not get to be heard today and wishes to say that according to the Rule that if Mom and Ms. Wilson does not file an Opposition the Court is entitled to presume meritoriousness of his Motion because it is Unopposed. COURT NOTED the Rules do allow the

| PRINT DATE: | 09/11/2023 | Page 7 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

Court may, not shall, but it may Grant a Motion if it is unopposed on merits though, in this case the Court do not FIND the merits have value and that is why the Court wanted to have this hearing today to get clarification from and the only person that can speak to what the Plaintiff learned is the Plaintiff, not Dad, it says "at the hearing for the Protective Order the Plaintiff learned that Defendant made phone calls to the child's school," the Court has no reason to question or uproot the Decision rendered by Judge Ochoa on his DECISION and ORDER especially if it was already affirmed by the Highest Court in our State but the Court wanted to give Dad the benefit of the doubt to have this hearing today to ask Mom if this was in fact correct, if Mom were to tell the Court today that it should have been Plaintiff and not Defendant and vice versa and that Mom did not learn that the Court would have been willing to grant Dad's request , but this request had  to have the Court to sit here and take testimony, and based upon the testimony the Court received, the Court shall DENY Dad's Motion and FIND that the Order that was written by the Eighth Judicial District Court on December 19, 2020, that was AFFIRMED by the Highest Court in our Supreme Court is now HEREBY AFFIRMED and Dad's Motion is HEREBY DENIED. COURT FURTHER NOTED that no Motion, no Opposition, or request for Attorney's Fees was sought on there, so no fees will be granted on this Motion. (JAVS 10:53:18 A.M.) The Court allowed Dad to read from the record, and make further representations. Dad represented he noticed several times that the Court stated that the Nevada Court of Appeals has AFFIRMED and that the United States Supreme Court has AFFIRMED, and Dad stated that he thinks that is a fair and accurate representation, and that he does wish to add however there has never been one time that any Nevada jurist or any Federal jurist has ever said "your constitutional arguments lack merit," Dad stated he wish to add this on the record and the way he would describe it is that they ignored his argument. (JAVS 10:55:34 A.M.)

The Court has rendered Rulings on all of the Motions that were pending before this Court, and all that remains is the Motion for Attorney's Fees; the COURT NOTES that the Motion for Attorney's Fees on the first two Motions, namely the Motion for Third-Party Interloper and the Motion for Declaratory Relief, the Opposition and the request for Relief and Attorney's Fees is hereby GRANTED, pursuant to Miller v. Wilfong, Attorney's Fee Awards for Pro Bono Counsel are proper, provided that a legal basis exists and proper factors are applied to support the award, the legal basis for Granting Attorney's Fees for the first two Motions herein, in this case, is pursuant to NRS 18.010 2. (b)as well as EDCR 7.30(b)(1) and (b)(3). Pursuant to NRS 18.010 2. (b) the Court may award Attorney's Fees if it finds that Respondent's claims were brought or maintained without grounds or to harass Plaintiff/Mom, who is the prevailing Party in these two Motions. The Court shall liberally construe the provisions of this paragraph in favor of awarding Attorney's fees in all appropriate situations. The Court may award Attorney's Fees and impose sanctions pursuant to Rule 11 of the Nevada Rules of Civil Procedure in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses because such claims and defenses overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public. Furthermore, pursuant to EDCR 7.60(b)(1) and EDCR 7.60 (b)(3),(b) The Court may, after notice and an opportunity to be heard, impose upon an

| PRINT DATE: | 09/11/2023 | Page 8 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice:  Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

attorney or a party any and all sanctions which may, under the facts of the case, be reasonable, including the imposition of fines, costs or Attorney's fees when an attorney or a party without just cause:(1) Presents to the Court a motion or an opposition to a motion which is obviously frivolous, unnecessary or unwarranted.

The COURT FINDS, pursuant to NRS 18.010 2. (b), EDCR 7.60(b)(1), and EDCR 7.60 (b)(3), that Attorney's Fees are warranted in that Mom and Ms. Wilson have had to defend against Dad's arguments which are frivolous, unnecessary and unwarranted. Furthermore, pursuant to NRS 18.010 2. Dad has multiplied the proceedings of this case as to increase costs unreasonably and vexatiously. The Court FURTHER FINDS that these were brought or maintained without reasonable ground or to harass the Mom, who is the prevailing Party in both of these Motions. Dad's claims overburden limited judicial resources hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public, this is evidenced by Mom's Exhibit, Electronically Filed on January 18, 2023, in her Opposition to Respondent/Dad's Motion, Exhibit 3, 4, 5,6, 7, and 8 demonstrating Dad's vexatious, litigious, harassing allegations, threats, namely Exhibit 3 in an email from Dad to Ms. Wilson, "Exhibit 3, an email from Phillips to the undersigned counsel on December 22, 2021, Phillips wrote: I'm going to be doing some more slash 'n burn litigation, the kind to which you've grown accustomed, the kind for which you won't be paid." Specifically, in Exhibit 4, in an email from Dad to Ms. Wilson, dated August 25, 2021, Dad wrote to Ms. Wilson personally, "I have a new lawsuit for you. Will you accept service of process? Or, maybe we should make this as expensive as possible. You already lost $179,000 in Attorney's fees." The COURT FURTHER NOTES in Exhibit 5 Dad wrote to Ms. Wilson dated April 16, 2019, Dad says, "Dealing with you and your client is impossible Which explains why this litigation and the soon-to-be-filed spin off litigations will likely last 3 or four years." COURT FURTHER NOTES and FINDS that Exhibit 6 in an email from Dad to Ms. Wilson dated March 27, 2019, Dad says, " Expect a flurry of litigation. And you ll not be paid a thin dime for any of your work." COURT FURTHER NOTES Exhibit 7 references Dad's email to Ms. Wilson dated March 14, 2022, wherein Dad says, "HEY WILSON!! YOU RE NEVER GETTING A DIME OUT OF ME!! KEEP SPINNING YOUR WHEELS!! PRINT THIS OUT!! MAKE SURE YOU INCLUDE THIS IN YOUR NEXT APPENDIX . . . .PUT THIS IN YOUR REPLY BRIEF!! I DARE YOU!!" The COURT FURTHER NOTES that Exhibit 8 references an email from Dad to Ms. Wilson, dated March 21, 2022, wherein Dad says, "print out this email, take it to court, and start bellyaching about whirlwinds of litigation." The COURT FINDS that these Exhibits among others are offers of proof to establish that Dad is vexatious, vindictive and resilient on filing frivolous, baseless Motions and causes of actions against Mom, Ms. Wilson, and anyone who gets in his way of harassing Mom and Ms. Wilson, including Judicial Officers who have ruled against Dad. This is further evidenced by Dad's history of filing baseless causes of action against Mom, Ms. Wilson, and Judicial Officers that have ruled against Dad, which are all clearly delineated and referenced herein in footnote 5, of pages 11 through 12 in Mom's Limited Opposition, dated January 18, 2023, delineating Dad's litigious nature as evidenced at least ten causes of actions, filed in the Eighth Judicial District Court, Nevada Supreme Court, Federal District Court of Nevada, the Court

| PRINT DATE: | 09/11/2023 | Page 9 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

hereby incorporates footnote 5, pages 11 through 12, of Mom's Limited Opposition, dated January 18, 2023, herein, in the interest of time, the Court can read it or incorporate the whole footnote, the Court will incorporate herein footnote 5, pages 11 through 12.

THE COURT FINDS that Dad's Motions are frivolous, baseless, and without merit and based upon the totality of circumstances including Dad's history of filing baseless claims against Mom and Ms. Wilson and any Judicial Officer, the COURT FINDS that Dad filed the Motions against Mom with the intention to harass and intimidate and burden Mom, Ms. Wilson and this Court with baseless, frivolous, protractive litigation, therefore, pursuant to NRS 18.010 2. (b) and EDCR 7.60, the Court has wide discretion as it pertains to making Orders where a Party have presented themselves in a manner, and presented frivolous unnecessary filings Motions and has unreasonably increased fees and cost in this matter and has failed and/or refused to comply with Rules and Orders of this Court, therefore, the COURT FINDS pursuant to EDCR 7.60 and NRS 18.010 2., Dad has presented frivolous unnecessary filings, motions and unreasonably increased fees and cost in this matter and has failed or refused to comply with the Rules and Orders of this Court and is therefore liable for Mom's AWARD of ATTORNEY"S FEES AND COST in having to defend against Dad's Motions one (1) and two (2) herein, subject to the Brunzell Analysis.

(See JAVS 11:02:17) For the Court's record Respondent/Dad's Motions that the Court is referring to is the first Motion which was the Defendant/Dad's Motion For An Order To Show Cause To Eject Third-Party Interloper From the Service List, the Plaintiff/Mom's Limited Opposition filed and Request For Attorney's And Costs is GRANTED, ANY and ALL FEES PERTINENT to this Motion are GRANTED, subject to the Brunzell Analysis and Affidavit. In addition, Dad's Motion For Declaratory Relief, And Modification Of Custody And Child Support, the Opposition thereto filed by Mom, and the Attorney's Fees sought are hereby GRANTED, subject to the Brunzell Analysis. The other Motions did not have Oppositions, nor were Attorney's Fees sought; although Mom was the prevailing Party in those matters there are no fees that were granted. The COURT FURTHER NOTES for the record that Protracted Litigation arises when a Party files several lawsuits against the same Adverse Party asserting a right to recover arising from the same common nucleus of facts which have already been litigated by the Highest Court of this State. A vexatious litigant is defined as one who repeatedly files frivolous lawsuits in order to deter such conduct; the Nevada Supreme Court has allowed for the Court to limit such vexatious litigants' right of access to the Court unless that litigant does first demonstrate to the Court that the proposed case is not frivolous, this is pursuant to Peck v. Crouser, 295 P .3d 586, 587, 129 Nevada Advanced Opinion 12, 2013. The Nevada Supreme Court has set forth a four-step analysis when this Court is issuing a Vexatious Litigant Order. COURT NOTES that the first (1st) is to provide reasonable notice of an opportunity to oppose a Vexatious Litigant Finding and Order, (2) to provide a record in support of such an order, (3) how the litigants' actions constitutes vexatious make a substantial finding as to their frivolous and harassing nature of the litigants' actions (4) the litigants constitutional right to access the Court must be protected by making the vexatious litigant Order narrowly tailored the issue at hand, i.e., if the litigant repeatedly asserts

| PRINT DATE: | 09/11/2023 | Page 10 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

the same claim of a restrictive order would be limited to raising that same claim, this is set forth in Jones v Eighth Judicial District Court 330 Nevada P 3d 475 130 Nevada Advanced Opinion 53 2014, see also Jordan v. State, Department of Motor Vehicles Public Safety, 121 Nev. 44 110 P.3d 30 (2005). The Court FURTHER NOTES while there has not been a Motion from Vexatious Litigant that was filed before this Court, the Court is willing to entertain one should either Party seek one because the Court does NOTE that there is a record here establishing a Vexatious Litigant, there is a record here establishing that a constitutional right to access the Court must be narrowly tailored in that the Court's Decision and Order dated December 19, 2020, has been AFFIRMED and will not be disturbed by this Court, and therefore, if there are any further Motions that are filed to try to disrupt, Set Aside or to clarify the Motion that was already upheld by this Court Order that, this Court will be DENYING it unless there is new evidence and new grounds, however, the COURT NOTES this matter was already taken to the Nevada Supreme Court and has been AFFIRMED. Although this Court does not have a Vexatious Litigant before the Court, the Court does have enough of a record to move forward on one should reasonable notice and an opportunity to be heard and a Motion filed, the Court leave that for both Parties to be aware of.

Dad made an ORAL REQUEST for TIMESHARE with the child, pursuant to the Rowe Decision. Ms. Wilson made arguments opposing Dad's request. That Dad had not followed the Court's previous Orders for therapy, there is no change in circumstances to warrant Dad's request, and that all prior orders must stand. The Court having heard the arguments that are respectfully brought before this Court, and the arguments and the Oral Motion, the Court respects Dad's request, and as the Court already delineated herein, that Dad filed the Motion to Modify Custody, even if it is to Modify Visitation, Dad is seeking to Modify has to be brought before the Court and provide a substantial change in circumstances affecting the welfare of the child and the best interest of the child is the paramount concern, the Court in its DECISION and ORDER rendered some very specific FINDINGS around Dad's contact with the subject minor child to be through the Reunification Therapist or Reunification Process, it was incumbent on Dad to find a Reunification Therapist so that Dad and the child could reunite in a place, in a therapeutic setting, and this was set forth in place because the best interest of the child considering all of the factors set forth in the DECISION and ORDER, and that Dad was also GRANTED time to contact the child via phone, there are very specific Orders that were set forth in place so that Dad can have a bond, unify and heal with the child. The Court inquired if Dad had done that, and Dad stated no, he had not. The Count NOTED Dad must follow those steps set forth for Dad to call his child, and Dad stated the child does not answer, and the Court NOTED for Dad to reach out to the Reunification Therapist. The COURT FURTHER NOTED it was not going to put the child in a vehicle with Dad when the child does not speak to Dad over the phone. The Court is NOT GRANTING ANY MODIFICATION at this point; the law is very clear, the instructions are clear, and Dad must abide by those instructions set forth in the DECISION and ORDER and the Court's RULING STANDS.

Ms. Wilson shall prepare and submit today's Motion Hearing Order.

| PRINT DATE: | 09/11/2023 | Page 11 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

D-18-578142-D

Ms. Wilson shall file a Brunzell Analysis.

CLERK'S NOTE: A copy of the Court Minutes was distributed to domestic sealing to STRIKE Respondent/Dad's responses on page four (4) of his Motion to Strike Immaterial and Scandalous Matter, [NRCP, Rule 12(f)] shall be STRICKEN in its entirety, pursuant to [NRCP 12 (f)(1)] as Immaterial, impertinent, redundant and scandalous, and any and all reference to a "Shannon R. Wilson Hoax," or any and all reference to Respondent/Dad's alleged threats to "shoot up his son's school," or any repercussions thereof regarding any third-parties not involved in this action are HEREBY STRICKEN FROM THE RECORD. (SWB_9.11.23)

**INTERIM CONDITIONS:**

**FUTURE HEARINGS:**

*Canceled: September 12, 2023 10:00 AM Order to Show Cause*
*Reason: Canceled as the result of a hearing cancel, Hearing Canceled Reason: Vacated*
*Courtroom 02*
*Bourne, Sheila*
*Parlade, Mari D*

*Canceled: September 14, 2023 9:30 AM Hearing*
*Reason: Canceled as the result of a hearing cancel, Hearing Canceled Reason:*
*RJC Courtroom 17A*
*Wiese, Jerry A.*
*Medina, Vanessa*

November 08, 2023 10:00 AM Motion
Courtroom 04
McConnell, Regina M.

| PRINT DATE: | 09/11/2023 | Page 12 of 12 | Minutes Date: | August 15, 2023 |
|---|---|---|---|---|

**Notice: Journal entries are prepared by the courtroom clerk and are not the official record of the Court.**

# Exhibit No. "2"

Correspondences re Spoliation

(Sept. 13 –14, 2023)

**T. Matthew Phillips**
**Attorney-at-Law**
*Not Licensed in Nevada\**
**4894 W. Lone Mtn. Rd.**
**Las Vegas, Nev. 89130**
**(323) 314-6996**

Sept. 13, 2023

Via E-Mail

Ms. Lauren Peña
County Counsel, Clark County
601 North Pecos Rd.,
Las Vegas, Nev. 89155

Re:    **Admonition re Spoliation of Evidence**
       **Case No. D-18-578142-D  [*Phillips vs. Phillips*]**

ADMONITION *re* SPOLIATION *of* EVIDENCE

Hello, Counsel.  I know you to be a capable attorney.  I write to you in earnest.
Please consider this a notice of intent to sue the County and the sitting judge in Dept.
"A."  I politely ask that County Counsel instruct the sitting judge and staff concerning
***spoliation of evidence*** including their legal duty to preserve all documents, computer
files, programs, and apps, related to Case No. D-18-578142-D, [*Phillips vs. Phillips*].

Please instruct the sitting judge and staff not to lose, alter, delete, or destroy—any
document, computer file, program, or app, related to Case No. D-18-578142-D.

Specifically, your clients shall preserve, and shall not lose, alter, delete, or destroy,
the below described documents—

1.    The WRITTEN SCRIPT from which the judge read aloud, in open court,
      on Aug. 15, 2023, related to Case No. D-18-578142-D.  Note, the judge read
      from a computer screen, *therefore*, the WRITTEN SCRIPT my office seeks is
      presumably saved to a computer disk or hard drive, presumably, on a device to
      which Dept. "A" has access.

2.    All COMPUTER FILES that generated the WRITTEN SCRIPT from which
      the judge read aloud, in open court, on Aug. 15, 2023, related to Case No.

* *Licensed in California, (Lic. 165833), U.S. District Court, Central District of Calif.*
  *Ninth Circuit Court of Appeals, and United States Supreme Court, (Lic. 317048)*

Ms. Lauren Peña
Sept. 13, 2023
Page Two

D-18-578142-D.  Note, in deciding the motions at-issue on Aug. 15, 2023, the judge used an A.I., ("artificial intelligence"), app or program.  Presumably, there exists an e-trail of evidence, including the data "submitted to" the A.I. program, the data "generated from" the A.I. program, and the program data itself, as well as attendant storage files.

3. All EMAIL COMMUNICATIONS by and between the Dept. "A" judge and its staff—and any other person or entity, including court personnel, deputy marshals, opposing counsel, *etc.*, (*not* including County Counsel), related to Case No. D-18-578142-D.

Please advise your clients that their negligent (or intentional) loss, alteration, deletion, or destruction of documents or computer files, programs, or apps, will cause my office to seek discovery sanctions, including monetary sanctions, a default judgment, an adverse jury inference, and assessment of litigation costs and fees.

To recap, all documents, computer files, programs, or apps, related to Case No. D-18-578142-D—shall be preserved—and shall not be lost, altered, deleted, or destroyed. Thank you for your kind assistance in this matter.

*Respectfully Submitted,*

*T. Matthew Phillips*
Calif. State Bar No. 165833
(*Not Licensed in Nevada*)
(Licensed, U.S.D.C., Central District, Calif.)
(Licensed, Ninth Circuit Court of Appeals)
(Licensed, U.S. Supreme Court, U.S. Bar No. 317048)
Email: TMatthewPhillips@aol.com
Tel: (323) 314-6996

---

*\* Licensed in California, (Lic. 165833), U.S. District Court, Central District of Calif.*
*Ninth Circuit Court of Appeals, and United States Supreme Court, (Lic. 317048)*

# RE: Letter re Spoliation

From:   Pena, Lauren (penal@clarkcountycourts.us)

To:     tmatthewphillips@aol.com

Date:   Thursday, September 14, 2023 at 08:57 AM PDT

Good morning,

Received.

Lauren A. Peña
Staff Attorney, Eighth Judicial District Court
200 Lewis Ave. Las Vegas, NV 89101
702-671-3098 | PenaL@clarkcountycourts.us

This e-mail may contain confidential or privileged information. If you believe you have received it in error, please notify the sender immediately and delete this message without copying or disclosing it.

**From:** TMatthewPhillips <tmatthewphillips@aol.com>
**Sent:** Wednesday, September 13, 2023 4:05 PM
**To:** Pena, Lauren <PenaL@clarkcountycourts.us>
**Subject:** Letter re Spoliation

```
[NOTICE:  This message originated outside of Eighth Judicial District Court -- DO NOT CLICK
on links or open attachments unless you are sure the content is safe.]
```

-- please see attached --

T. Matthew Phillips

Attorney-at-Law

(323) 314-6996