T. MATTHEW PHILLIPS, ESQ.
Calif. State Bar No. 165833
United States Bar No. 317048
(*Not Licensed in Nevada*)
4894 W. Lone Mtn. Rd., No. 132
Las Vegas, Nevada 89130
Telephone: (323) 314-6996
TMatthewPhilllips@aol.com
*Self-Represented*

X  FILED     ___ RECEIVED
___ ENTERED  ___ SERVED ON

AUGUST 25, 2025

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
BY: /s/ RJDG                DEPUTY

# UNITED STATES DISTRICT COURT

# LAS VEGAS, NEVADA

_____
                              )  **Case No: 2:25-cv-01464-GMN-NJK**
                              )
**T. MATTHEW PHILLIPS**       )
                              )  PLAINTIFF'S OBJECTIONS
     *Plaintiff*              )  *to the* MAGISTRATE'S
                              )  REPORT *and* RECOMMENDATION,
                              )  [LR IB 3-2].
     *vs.*                    )
                              )  ORAL ARGUMENT REQUESTED,
                              )  [LR 78-1].
**HON. MARI PARLADE**         )
                              )
     *Defendant*              )
                              )  *Hon. Gloria M. Navarro, Judge*
_____)  *Hon. Nancy J. Koppe, Magistrate Judge*

/ / / /

/ / / /

/ / / /

# TABLE *of* CONTENTS

Heading                                                                                     Page No.

I.      *Presumption of Truth* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      1

II.     *A.I. Allegations Must Be Presumed True.*. . . . . . . . . . . . . . . . . .    1

III.    *The Delegation of Judicial Duties is Not a Judicial Act* . . . . . .    2

IV.     *A Judge's 'Vested Authority' Does Not Include the
        Authority to Delegate Official Decision-Making Duties* . . . . . .     4

V.      *Defendant-Judge Delegated 100% of Her Honor's Duties* . . . . . .   4

VI.     *How Phillips Discovered the A.I. Use* . . . . . . . . . . . . . . . . . . . . .   7

VII.    *Lawsuit of First Impression* . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

VIII.   *Denying Phillips' Right to Oral Argument* . . . . . . . . . . . . . . . . . .   9

IX.     *Using the Marshals to Intimidate and Coerce* . . . . . . . . . . . . . . .    10

X.      *Rooker-Feldman Applies Only to Final Judgments* . . . . . . . . . .   11

XI.     *Summary and Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

        *Dec'l of T. Matthew Phillips, Esq.* . . . . . . . . . . . . . . . . . . . . . . .   14

\* \* \*

TABLE *of* AUTHORITIES

<u>Case Law Decisions:</u>                                                                                          <u>Page No.:</u>

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009) . . . . . . . . . . . . . . . . . . . . . . . .    1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) . . . . . . . . . . . . . . . . .    1

*Bradley v. Fisher*, 80 U.S. 335, (1871) . . . . . . . . . . . . . . . . . . . . . . . . .    5

*Colorado River Water Conservation Dist. v. U.S.*,
424 U.S. 800, (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Depot, Inc. v. Caring for Montanans, Inc*. 915 F.3d 643,
(9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

*District of Columbia Court of Appeals v. Feldman*,
460 U. S. 462, (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280, (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

*Kwan v. SanMedica Int'l,* 854 F.3d 1088, (9th Cir. 2017) . . . . . . . . . . . .    1

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802,
(9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

*Malhan v. State Dept*., (2019), No. 18-3373,
Third Circuit, (New Jersey) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Meek v. County of Riverside*, 183 F.3d 962, (9th Cir. 1999) . . . . . . . . . .    4

*Mireles v Waco*, 502 U.S. 9, (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .    2, 4

*NL Indus., Inc. v. Kaplan*, 792 F.2d  896, (9th Cir. 1986) . . . . . . . . . . .    1

*Rooker v. Fidelity Trust Co*., 263 U. S. 413 (1923) . . . . . . . . . . . . . . . .    11

*Stump vs. Sparkman*, 435 U.S. 349, (1978) . . . . . . . . . . . . . . . . . . . . .    *passim*.

*Turner v. City & County of San Francisco*, 788 F.3d 1206,
(9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

\* \* \*

*Table of Authorities*

OBJECTIONS *to* REPORT *and* RECOMMENDATION

**I.        Presumption of Truth.**

<u>The Truth of the Allegations</u>: "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party," [*see Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096, (9th Cir. 2017), *citing Turner v. City & County of San Francisco*, 788 F.3d 1206, at 1210 (9th Cir. 2015)].

<u>Allegations Presumed True</u>: "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff," [*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810, (9th Cir. 1988), *citing*, *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986)]. "To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" [*see Depot, Inc. v. Caring for Montanans, Inc*. 915 F.3d 643, 653, (9th Cir. 2019), citing, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)].

**II.        A.I. Allegations Must Be Presumed True.**

<u>A.I. Allegations Presumed True</u>: The *Complaint* alleges that, back in 2023, the judge did use artificial intelligence, ("A.I."), with no human judgment from the bench—to decide five family court motions. These facts are presumed true.

<u>Magistrate's Report</u>: The *Report* characterizes the complaint as alleging the judge, "acted improperly in issuing rulings that utilized artificial intelligence," [(Dkt. #6); (p. 2, line 3)]. But this is not the whole story. The judge did not merely utilize A.I.—as if A.I. were a bit-player in a larger judicial act; rather, the judge delegated 100% of the decision-making duties to an inanimate machine and never verified the A.I. work product. Acting with no independent human judgment or discretion, the **delegation of duties** came in the "**clear absence of all jurisdiction**."

### III.  The Delegation of Judicial Duties is Not a 'Judicial Act.'

<u>Delegating Judicial Duties—Not a 'Judicial Act'</u>:  Where judges delegate their decision-making duties—there is no "judicial act"—because judges are forbidden to delegate decision-making duties in the first place, [NCJC, Rule 2.7]. The act of delegation lay outside the judge's job description, which means the "act" of delegation cannot be a "judicial act" within the meaning of *Stump vs. Sparkman*, [435 U.S. 349 (1978)].  So too, the "act" of creating an A.I.-generated ruling simply does not qualify as a "judicial act."

<u>Judges Lack Authority to Delegate Duties</u>:  It goes without saying—judges lack authority to delegate decision-making duties; *therefore*, the "act" of delegation is not a "judicial act," nor is the creation of an A.I. ruling.  And thus, the judge is not entitled to immunity under *Stump vs. Sparkman*, [435 U.S. 349 (1978)].

<u>Magistrate's Report</u>:  According to the *Report*, "***the crafting and issuance of a judicial ruling is squarely within the scope of judicial actions for which immunity applies***," [(Dkt. #6); (p. 2, l. 8–9)].  But this over-generalizes the issue. This misses the mark because it presumes a human judge is doing the "crafting." The ruling was crafted exclusively by A.I.—with no discretionary human thought. More than that, the judge never verified the A.I. work-product, nor even bothered to read the parties' briefs.  It was a total dereliction of decision-making duties.

<u>A.I. Use—Not a Normal Judicial Function</u>:  To determine whether a judge's action is a "judicial act," court looks to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, [*Stump vs. Sparkman*, (*id.*)].  Obviously, where judges delegate the human decision-making process to an A.I. app, it is *not* a normal judicial function, and thus, it's *not* a "judicial act."  NCJC grants no jurisdiction to delegate decision-making duties, [Rule 2.17]; *therefore*, the judge's act of delegation comes in the complete absence of all jurisdiction.  "[A] judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction," [*Mireles v Waco*, 502 U.S. 9, at 11-12 (1991)].

<u>What is a 'Judicial Act'?</u>:  Well, the answer depends how one frames the issue.  The *Report* contends the judge was merely issuing an opinion, which lay within proper jurisdictional boundaries.  The *Report* concludes, "***the crafting and issuing an opinion***" is a judicial act, [(Dkt. #6); (p. 2, line 8)].  But Phillips argues this issue is much too broad, too over-generalized.

<u>The Articulated Issue</u>:  If this Court were to frame the issue like this— "***When a judge presides over a family court hearing, is it a judicial act?***"—then, yes, the judge gets immunity.  However, if the court frames the issue like this— "***Is the making of an A.I.-generated ruling—that contains no independent human judgment or discretion—deemed a judicial act?***"—then there is but one conclusion, *i.e.*, the making of an A.I.-generated ruling is *not* a "judicial act," especially because there is no human thought or discretion involved.  If the Court relies on the latter issue, then there is no "judicial act," and Phillips prevails.

<u>Phillips Prevails on This Issue</u>:  Phillips prays the Court consider this issue— ***"Where judges delegate their decision-making duties to machines, (or other humans), is the act of delegation deemed a 'judicial act'—i.e., within the meaning of Stump vs. Sparkman?"***  If the Court adopts this version of the issue, then there is no basis for judicial immunity and Phillips prevails.

<u>Phillips Loses on This Issue</u>:  On the other hand, if the Court frames the issue like this—***"Is the issuance of an opinion deemed a 'judicial act'—i.e., within the meaning of Stump vs. Sparkman?"***  Well, obviously, if the Court relies on this overbroad issue, then judicial immunity applies, and Phillips loses.

<u>Characterization of the Judge's 'Act'</u>:  The judge's act of "making" an A.I.-generated ruling—which came with no independent human judgment or discretion—cannot be a "judicial act."  So too, the judge's act of "delegating" official decision-making duties—which came with no vested legal authority— cannot be a "judicial act."  The judicial actions, as alleged in the *Complaint*, are not "judicial acts"; *therefore*, as a matter of law, immunity does not attach.

### IV. A Judge's 'Vested Authority' Does Not Include the Authority to Delegate Official Decision-Making Duties.

<u>A Judge's Vested Authority</u>:  "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising ***the authority vested in him***, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" [*Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999), citing, *Mireles v. Waco*, 502 U.S. 9, 10 (1991); (bold italics added)].

<u>Exercising 'Vested Authority'</u>:  Pursuant to the above citations, judges are entitled to immunity when "exercising ***the authority vested in him***."  But here, Defendant-judge was not "exercising ***the authority vested in*** [***Her Honor***]."  Indeed, the "delegation" of decision-making duties cannot be deemed an exercise of "***the authority vested in*** [***Her Honor***]."  The judge has no "vested authority" to delegate decision-making duties—because, of course, such delegation of duties is not permitted in the first place, [*see* NCJC, Rule 2.7].

### V. Defendant-Judge Delegated 100% of Her Honor's Duties.

<u>100% of Decision-Making Duties—Delegated</u>:  Had the judge used A.I. merely as a "crutch," *i.e.*, a starting-point to research governing law, the judge's A.I. use would be wholly permissible and within the bounds of proper jurisdiction. But here, the judge used A.I. in a decidedly reckless manner, with ***zero human judgment from the bench***.  The judge never bothered to (i) verify the A.I. work-product, or (ii) even read the parties' briefs.

<u>Judicial Act</u>:  Had the judge used A.I. as part of a larger, judicial process, *i.e.*, that included human thought, judgment, or discretion from the bench, then the resulting ruling would be deemed a "judicial act" within the scope of immunity under *Stump vs. Sparkman*, [435 U.S. 349 (1978)].

A.I.-Assisted Rulings: Phillips will concede that **"A.I.-assisted rulings"** would fall within the scope of judicial immunity under *Stump vs. Sparkman*, [*id*.]. But here, the judge's five rulings, (Aug. 15, 2023), are not merely "A.I.-assisted"; rather, these five rulings are 100% A.I.-generated—with ***zero human thought, judgment, or discretion from the bench.***

No Human Act—No 'Judicial Act': In deciding Phillips's five motions, (on Aug. 15, 203), there were no "human actions," and thus, nothing that might be labeled a "judicial act" under *Stump vs. Sparkman*, [*id*.]. Here, the judge delegated 100% of Her Honor's judicial decision-making duties. The judge undertook not one act that might be characterized as "human" or "judicial." And thus, acting with ***zero human thought, judgment, or discretion from the bench***, there is nothing to characterize as a "judicial act"—and judicial immunity does not attach.

Delegation of Duties is Not a Judicial Act: Here, ChatGPT did all the work! The judge did the "***administrative***" act of flipping the switch on the A.I. program. The judge engaged in (a) no human deliberation, (b) no human reflection, and (c) no human cogitation. In other words, the judge delegated 100% of Her Honor's decision-making duties, which came in the "clear absence of all jurisdiction." Again, judges may not delegate judicial decision-making duties in the first place, [NCJC, Rule 2.7]. (Note: Phillips does not bring suit because the judge violated a "rule"; obviously, "rules" do not give rise to causes-of-action; rather, Phillips relies on Rule 2.7 because it specifically forbids delegation of judicial decision-making duties, which thus demonstrates that the act of delegation comes in the "clear absence of all jurisdiction").

Clear Absence of All Jurisdiction: "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but, rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction,"" [*Stump v. Sparkman*, 435 U.S. 349 (1978), citing, *Bradley v. Fisher*, 80 U.S. 335, pp. 355-357, (1871)].

<u>Erroneously, Maliciously, or Excessively</u>:  As a general rule-of-thumb, judges are immune from liability for judicial acts—even when such acts are performed with impropriety, *i.e.*, (i) ***erroneously***, (in error), (ii) ***maliciously***, (motivated by malice), or, (iii) ***excessively***, (exceeding the scope of jurisdiction).

- Phillips does not allege that the judge used A.I. in an ***erroneous*** manner; rather, the judge has no jurisdiction, ("authority"), to use A.I. in the first place.
- Phillips does not allege that the judge used A.I. in a ***malicious*** manner; rather, the judge has no jurisdiction, ("authority"), to use A.I.  in the first place.
- Phillips does not allege that the judge used A.I. in an ***excessive*** manner; rather, the judge has no jurisdiction, ("authority"), to use A.I. in the first place.

<u>Material Allegations</u>:  Taken in the aggregate, the material allegations of the complaint allege that, (i) Defendant-judge's decision-making process relied exclusively on A.I., (ii) Defendant-judge never bothered to verify the A.I. work-product; (iii) Defendant-judge never bothered to even glance at, let alone read, Phillips' briefs.  Again, these allegations must be presumed true.

<u>The Truth of the Allegations</u>:  The Court, *respectfully*, must presume the truth of the A.I. allegations.  Defendant-judge, on Aug. 15, 2023, denied five of Phillips' motions, declaring them all frivolous, for a (supposed) failure to include "points & authorities."  But, in reality, one need take only a cursory glance at Phillips' briefs to actually see the "points & authorities." [*Complaint*, ¶¶ 20–22]. (<u>Note</u>:  if the judge, back on Aug. 15, 2023, would have merely taken a brief gander at Phillips' briefs, Her Honor would have seen the distinctive presence of case-law citations and statutory citations, *i.e.*, "points and authorities."  Here, the fact that the ruling found no "points and authorities" is a telltale sign of A.I. use.)
/ / / /

### VI. How Phillips Discovered the A.I. Use.

<u>Consolidated Motions?</u>:  On Aug. 15, 2023, Phillips was puzzled when the judge, from the bench, explained that the court had "consolidated" the parties' motions into "one document."  But, what did the judge mean?—to "consolidate" opposing motions? [*see Complaint*, ¶¶ 33–36].  Despite tens of thousands of hours arguing in open-court, Phillips never heard a judge say that the court had "consolidated" opposing motions into "one document."

<u>No Such Thing as 'Consolidated' Motions</u>:  Nevada law contemplates the consolidation of ***cases***; *however*, Nevada law is silent as to the consolidation of ***motions***.  Okay, so, what on Earth did the judge mean, when indicating that the court had "consolidated" the parties' motions?  Well, it can only mean one thing—the judge simultaneously scanned both motions together, into one document, which was then submitted to an A.I. application.  *Et voilà!*—instant ruling.

<u>Memorandum Heading</u>:  Back in 2023, the judge had access to an A.I. technology that included the Eighth District Local Rules, which require motions must be accompanied by a "MEMORANDUM OF POINTS AND AUTHORITIES." Phillips's five motions, which Defendant-judge summarily denied, *do not* contain conspicuous headings with all-capital letters: "M-E-M-O-R-A-N-D-U-M- -O-F- -P-O-I-N-T-S- -A-N-D- -A-U-T-H-O-R-I-T-I-E-S."  And so, once the A.I. process was underway, the A.I. bots would've been searching-for—but unable to find in Phillips' motions—the magical buzz words, "MEMORANDUM OF POINTS AND AUTHORITIES." And that's how the A.I. bots, (in their unassailable wisdom), reached the factual conclusion that Phillips' motions lack "points & authorities," which led to the legal conclusion that the motions are "frivolous."

<u>The Cardinal Sin</u>:  The judge would then go-on to fully embrace and adopt the A.I. findings, sight unseen, without question. After that, once the whirring A.I. machineries had powered-down, the judge's job was done—and the judge never looked back.  But again, this is where the judge commits the cardinal sin that

novice A.I. users so typically commit, *i.e*., the judge failed to verify the A.I. work-product.  More than that, the judge never bothered to eyeball Phillips' briefs!

<u>The Judge Never Read Phillips' Briefs</u>:  Obviously, the judge failed to read Phillips' briefs.  For if Her Honor had—the "points & authorities" would've been evident; (however, it seems this judge could not be bothered for so much as a fleeting glance at Phillips' briefs…).

<u>The Judge Does Not Deny Having Used A.I.</u>:  This fact is huge.  Back in 2023, once it donned on Phillips that the judge had used A.I. to decide his five motions, he moved to disqualify.  In response, the judge filed a declaration; *however*, and remarkably, the judge *did not* deny the pointed A.I. allegations.  Phillips argues that the judge's failure-to-deny is highly probative—for it amounts to a tacit admission, [*see Complaint*, ¶ 8].

**VII.  Lawsuit of First Impression.**

<u>If It Please the Court</u>:  Phillips' *Complaint* is the first American lawsuit in history to allege A.I. use by a judge.  The *Complaint* presents "nonfrivolous argument[s] for extending, modifying, or reversing existing law or for establishing new law," [NRCP, Rule 11(b)(2)].  Plaintiff believes a ruling, even an unfavorable one, will serve to delimit legal issues surrounding artificial intelligences, ("A.I."), and the judicial decision-making process.

<u>Articulated Issue</u>:  May Nevada judges delegate their decision-making duties to *artificial intelligences*?—to decide contested matters?  Well, at first blush, the answer is, "No."  Judges may not delegate decision-making duties, [*see* NCJD, Rule, 2.7].  It goes without saying.  The assigned judge *shall* decide matters before the bench.  No other person or entity may assume the judicial role of a "decider."  "*A judge shall hear and decide matters assigned to the judge*," [NCJD, Rule 2.7].

<u>Legal Analysis</u>:  A sitting judge is the *only* one with subject-matter jurisdiction to exercise judicial decision-making duties in contested matters, [*see*

NCJD, Rule 2.7]. No one but the sitting-judge may undertake judicial decision-making duties. This prohibition on delegating duties extends to (a) law clerks, (b) judicial secretaries, and (c) ChatGPT. Judicial officers may, of course, delegate such duties—but only where the parties so stipulate, and only pursuant to the parties' informed consent, *e.g.*, in instances where the parties may wish to explore arbitration or other alternative dispute resolutions, ("ADR").

### VIII.  Denying Phillips' Right to Oral Argument.

<u>Denying the Right to Oral Argument</u>:  The *Complaint* alleges that the judge violated Phillips' 14th Amendment right to a fair tribunal—by denying his right to oral argument, [Dkt. #1, ¶ 58]. At the family court hearing, (Aug. 15, 2023), the judge wrongfully refused to allow oral arguments—which local rules require for child custody matters.

<u>Judicial Act</u>:  The threshold issue concerns whether the judge—by having denied Phillips' right to oral arguments—had engaged in a "judicial act." At first blush, it would so appear. Phillips concedes that, when the judge denied Phillips' right to oral arguments, the decision to deny may be properly characterized as a "judicial act" to which immunity applies. But still, the judge acted ***in error***.

<u>Requested Ruling</u>:  Phillips prays for a ruling which recognizes that the judge—while having jurisdiction to deny oral arguments—nevertheless acted ***erroneously*** in the exercise of said jurisdiction. Rather than summarily dismiss Phillips' claims, this Court, *respectfully*, may rightly find that the judge engaged in a "judicial act"—for which Her Honor is insulated from liability—while at the same time recognizing that Her Honor committed legal error, (which would serve to promote confidence in the judiciary).

/ / / /

**IX.    Using the Marshals to Intimidate and Coerce.**

<u>Using the Marshals to Intimidate and Coerce</u>:  The *Complaint* alleges that the judge violated Phillips' 14th Amendment right to a fair tribunal—by using the marshals to intimidate and coerce during oral arguments, back in 2023, [Dkt. #1, ¶ 58].  At the family court hearing, (Aug. 15, 2023), the judge *maliciously* and *excessively* used the Marshals to intimidate and coerce Phillips, in retaliation for Phillips' ardent resistance to family court oppression.

<u>Judicial Act</u>:  The threshold issue concerns whether the judge—by having used the Marshals to intimidate and coerce Phillips—had engaged in a "judicial act."  Well, maybe.  Some might argue that judges have an inherent right to control hearings before them, and thus, so the argument goes, the judge's decision to use the Marshals as an instrument of terror may be properly characterized as a "judicial act" to which immunity applies.  But Phillips disagrees.

<u>Requested Ruling</u>:  At a minimum, Phillips prays for a ruling which recognizes that the judge—while having jurisdiction to control a court hearing—nevertheless acted *maliciously* and *excessively* in the exercise of said jurisdiction.  Phillips argues that the judge exceeded the lawful bounds of jurisdiction—to such a degree, that it becomes the "clear absence of all jurisdiction."  Phillips was the only civilian in court on Aug. 15, 2023.  The ex-wife and her attorney appeared remotely on Zoom.  Remarkably, on Aug. 15, 2023, the Marshalls outnumbered Phillips 2-to-1.  Truth is, Phillips is an old man, with eyeglasses and a slight build; (he poses a threat to no one).  The judge's security protocol was totally uncalled-for, *i.e*., excessively excessive, and maliciously malicious—so much so, Phillips argues, that the judge's "act" ceases to be a "judicial act."  Here, the willful and wanton misallocation of law enforcement assets was done with such a high degree of maliciousness and excessiveness, Phillips argues, that it should properly give rise to liability under Sec. 1983.

/ / / /

## X.     Rooker-Feldman Applies Only to Final Judgments.

<u>Rooker-Feldman Does Not Apply</u>:  Predictably, Phillips is again met with the hackneyed Rooker-Feldman defense; *however*, Rooker-Feldman does not here apply—and for obvious reasons.  Phillips seeks redress for civil rights violations—he is not seeking appellate review of any final state-court judgment.

<u>The Magistrate's Report</u>:  The *Report* is quick to rely on Rooker-Feldman; *however*, the *Report* cites no final state-court judgment.  What is the date of this (supposed) final judgment that Phillips (supposedly) challenges?  The *Report* is silent on-point.  Once the Court, *respectfully*, realizes that Phillips challenges no final state-court judgment, Rooker-Feldman thus falls away.

<u>Phillips Not Challenging His Divorce Decree</u>:  Most significantly, Phillips is *not* challenging his "divorce decree," which would constitute the "final judgment" in a divorce case.  Remember, Rooker-Feldman applies only to final state-court judgments, and thus, in order for the exclusionary doctrine to apply, Phillips would have to be challenging his "divorce decree"—***but he's not***.  Rather, Phillips' lawsuit challenges multitudinous civil rights violations that Defendant-judge committed on Aug. 15, 2023.

<u>Virtually Unflagging Duty</u>:  Phillips argues that Rooker-Feldman conflicts with the familiar maxim that federal courts have a "virtually unflagging" duty to exercise jurisdiction conferred by Congress, [*see*, *e.g*., *Malhan v. State Dept*., (2019), No. 18-3373, Third Circuit, (New Jersey), *citing Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817, (1976)].

<u>Doctrine of Limited Applicability</u>:  Notably, the U.S. Supreme Court has only ever applied the Rooker-Feldman doctrine twice, first in *Rooker v. Fidelity Trust Co*., [263 U. S. 413 (1923)], then, 60 years later, in *District of Columbia Court of Appeals v. Feldman*, [460 U. S. 462 (1983)].

<u>J. Ginsburg's Explains</u>:  J. Ginsburg explains the "limited circumstances" described in *Exxon* have arisen only twice in the Supreme Court—in *Rooker* and

*Feldman*. But still, federal district courts too liberally apply the doctrine to bewildered parents—who desperately flee to federal court, seeking sanctuary, praying for relief from onerous civil rights deprivations in family court.

The Exxon Case:  Back in 2005, the Supreme Court decided *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, [544 U.S. 280 (2005)].  In *Exxon*, the Supreme Court reversed the expansive interpretation of Rooker-Feldman, and J. Ginsburg confined the doctrine to "limited circumstances"—

[1] "cases brought in federal court by state-court losers";

[2] "complaining of injuries caused by final state-court judgments";

[3] "where the state-court judgment was rendered before the federal action commenced"; and,

[4] "inviting federal court review and rejection of those ***final state-court judgments***."

[*See Exxon*, 544 U.S. 280, at 284, (2005); (bold italics added)].

No Final Judgment At-Issue:  In short, Phillips' claims do not function as a *de facto* appeal of final judgment of divorce.  Phillips seeks no review of a final state-court judgment.  Rather, Phillips challenges Defendant-judge's multitudinous civil rights violations.

////
////
////

### XI. Summary and Conclusion.

<u>Summary</u>: The judge's act of "making" an A.I.-generated ruling—which came with no independent human judgment or discretion—cannot be a "judicial act." So too, the judge's act of "delegating" official decision-making duties—which came with no vested legal authority—cannot be a "judicial act." The judicial actions, as alleged in the Complaint, are not "judicial acts"; *therefore*, as a matter of law, judicial immunity does not here attach.

<u>Conclusion</u>: Phillips respectfully asks that the Court allow his claims to proceed. Phillips remains sincere.

Dated: **Aug. 25, 2025**          *Respectfully Submitted*,

*T. Matthew Phillips*
T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
United States Bar No. 317048
(*Not Licensed in Nevada*)
Email: TMatthewPhillips@aol.com
Tel: (323) 314-6996


                    *   *   *

## D<small>ECLARATION</small> *of* T. M<small>ATTHEW</small> P<small>HILLIPS</small>, E<small>SQ</small>.

I am T. Matthew Phillips, the Plaintiff.  The within allegations are true and correct of my own personal knowledge.  If called upon to testify, I could and would give competent and truthful evidence.

***I declare under penalty of perjury under the laws of the State of Nevada and the United States, the foregoing is both true and correct.***

Dated:  **Aug. 25, 2025**             *Respectfully Submitted,*

*/s/ T. Matthew Phillips*
T. Matthew Phillips, Esq.
Calif. State Bar No. 165833
United States Bar No. 317048
(*Not Licensed in Nevada*)
Email:  TMatthewPhillips@aol.com
Tel: (323) 314-6996


\*   \*   \*